[No. 3385. Feb. 18, 1929.]
[Rehearing Denied April 8, 1929.]

GONZALES et al. v. REYNOLDS et al.

[275 Pac. 922.]

W. J. Lucas and H. E. Blattman, both of East Las Vegas, for appellants.

Marron & Wood, of Albuquerque, for appellees.

OPINION OF THE COURT

WATSON, J. By the judgment appealed from J. H. Reynolds and Luis Rivera and wife were enjoined from carrying on, or conducting, a store or merchandise business upon certain described premises.

The facts as found by the trial court, and relied upon to support this judgment, may be stated as follows: The American Metals Company operated a mine employing some 200 persons, and with a large monthly pay roll. Aside from lands owned by this company, there was no other land except that of appellants Rivera offering a convenient location for a store to serve this community of miners. About the time of the opening of the mine appellants Rivera and appellee Melisendro Gonzales established and conducted upon the Rivera property a general merchandise store. Thereafter, said appellee purchased from said appellants their interest in said business, and, on October 10, 1927, took from them a lease upon the small premises, which had been theretofore used in said business, for a term of four years, at a rental of $100 per month, which lease contained the following provisions:

"That said party of the second part further covenants with the parties of the first part that said premises hereby leased, and the store building thereon erected, are to be used by him in the conduct of a general merchandise business, and for no other purpose, and the parties of the first part covenant and agree that during the term of this lease, or any renewal thereof, they will not lease to anyone else any of their land on the Upper Pecos

River to any person or persons desiring to engage in the general merchandise business and further covenant and agree that they will not during the life of this lease, or any renewal thereof, engage in the General Merchandise business on the said Upper Pecos River. Parties of the first part for and in consideration of the premises hereby given, grants and extends to the second party the option to renew or extend this lease on the same terms for an additional two years."

A large part of the value of the lease, and the principal inducement to pay the rent reserved, consisted in the protection which the covenant afforded against competition. After the execution of this lease, and while appellees were in enjoyment of the leasehold, appellants Rivera sold and conveyed to appellant Reynolds other premises included within the covenant above set forth for the purpose of enabling said Reynolds to establish a general merchandise business, which the latter proceeded to do; the carrying on of which business the present judgment enjoins. The purchase was made by Reynolds, with full notice and knowledge of the restrictive covenant in the lease.

Upon these facts the trial court concluded, as matter of law, that Reynolds "acquired such property and rights subject to all legal remedies and restrictions in favor of the plaintiffs to protect said rights as plaintiffs have and might enforce against the defendants Rivera had no such transfer been made."

Before taking up the specific errors assigned, we shall notice those more general objections which attack the theory of the decision. Appellants contend that the covenant for which protection is sought is void as in restraint of trade. They also contend that it is the mere personal covenant of appellants Rivera not to lease or to use the land for a general merchandise business; that such covenant was not violated by selling it to appellant Reynolds for use for that purpose; and that, in any event, Reynolds was no party to, and is not bound by, the covenant.

In our opinion, the restrictive covenant is not void as in restraint of trade. It is limited as to time and space, and is "subsidiary to the main purpose of disposing of an established business," and "no broader than necessary to protect the good will of the business sold."

See discussion and authorities in Gross, Kelly & Co. v. Bibo, 19 N. M. 495, 145 P. 480. See, also, Gallup Electric Light Co. v. Pacific Imp. Co., 16 N. M. 86, 113 P. 848; State v. Gurley, 25 N. M. 233, 180 P. 288.

The other question is more difficult. The Riveras have not leased their premises, and have not engaged in business. Hence they have not violated the letter of their covenant. Reynolds has not made any covenant, and is merely operating a lawful business on his own land. On what principle should either be enjoined?

Appellees give two answers to this question: (1) That the covenant is one running with the land and; (2) that, if not, it affects the value and nature of the interest conveyed and retained; and one holding under the covenantor, with notice of it, will be enjoined from violating it.

It is readily perceived that, if the covenant of the Riveras not to use the retained premises in the operation of a general merchandise business runs with the land, the judgment should be sustained. In such case Reynolds stands in the shoes of the Riveras and is bound. However, we are disinclined to enter upon a consideration of the technical question as to what covenants will be deemed at law to run with the land. We are here concerned with the rule in equity.

It has often been laid down in effect that covenants restricting the use of land, though not technically running with it, may be enforced in equity as against one taking title with notice. Case notes, 82 Am. St. Rep. at page 683; 21 Am. St. Rep. at page 486; 8 A. & E. Ency. Law (2d Ed.) p. 140; 7 R. C. L. p. 1125; note to Korn v. Campbell, 37 L. R. A. (N. S.) at pages 13 and 14; Pom. Eq. Juris. §§ 689, 1295, 1342, 1693; Berry's Restrictions on Use of Real Property, §§ 335 et seq. The principle is, as stated at 7 R. C. L. p. 1125, "preventing a party having knowledge of the just rights of another from defeating such rights." These texts cite numerous decisions. In many of them it is laid down that the failure expressly to bind assignees is not conclusive. Even at law, whether a covenant runs with the land seems not to depend upon the use of technical terms. It is to be

decided according to the intent of the parties as gathered from the instruments and the circumstances. 7 R. C. L. pp. 1101, 1102; case notes, 82 Am. St. Rep. at page 669, 21 Am. St. Rep. at page 491: Berry's Restrictions on Use of Real Property, p. 417.

In 1891, Mr. Freeman wrote as follows:

"It may be suggested, though not with absolute confidence, that the only distinction under this head is this: If the covenant is one which technically runs with the land, it may bind the successors in title of the original covenantor, irrespective of the question of notice; for they would be held to take the land subject to any burdens attaching to it under the strict rules of law, whether they had notice of such burdens or not; whereas if the covenant does not run with the land, they must have notice of it, actual or constructive; otherwise they occupy in respect of it the attitude of bona fide purchasers without notice, and it cannot be enforced against them in a court of equity."

Annotation to Ladd v. City of Boston, 151 Mass. 585, 24 N. E. 858, 21 Am. St. Rep. at page 488.

Mr. Berry, in 1915, states this as the rule, citing Hisey v. Eastminster Presby. Church, 130 Mo. App. 566, 109 S. W. 60. Berry's Restrictions on Use of Real Property, p. 417.

Among the decisions cited, the more numerous are those concerning building restrictions. They are too familiar to require discussion. Counsel for appellants consider them not in point, as involving different principles and questions of policy. Be that as it may, counsel for appellees are able to present a formidable line of authorities more or less analogous in fact or principle with the case at bar, and supporting in one way or another the present judgment. See Hodge et al. v. Sloan, 107 N. Y. 244, 17 N. E. 335, 1 Am. St. Rep. 816; Lanyon v. Garden City Sand Co., 223 Ill. 616, 79 N. E. 313, 9 L. R. A. (N. S.) 446; American Strawboard Co. v. Haldeman Paper Co. (C. C. A.) 83 F. 619; Clegg v. Hands, 44 Ch. Div. 503; Smith v. Gulf Ref. Co., 162 Ga. 191, 134 S. E. 446, 51 A. L. R. 1323; Bald Eagle Valley R. Co. v. Railroad Co., 171 Pa. 284, 33 A. 239, 29 L. R. A. 423, 50 Am. St. Rep. 807; Lewis v. Gollner, 129 N. Y. 227, 29 N. E. 81, 26 Am. St. Rep. 516; Town of Middletown v. Newport Hospital, 16 R. I. 319, 15 A. 800;

Spencer v. Stevens et al., 18 Misc. Rep. 112, 41 N. Y. S. 39; Childs v. Boston & Maine R. R., 213 Mass. 91, 99 N. E. 957, 48 L. R. A. (N. S.) 378.

While the foregoing cases may be distinguished from each other and from the case at bar, we think that the principles laid down may properly be relied on as precedents here. We shall refer to some of the distinctions.

Generally, the burden of the restriction will be found placed on the land demised. Here the restriction is on land retained, for the benefit of the leasehold. We are not advised that this affects the principle so often stated that equity interferes to prevent a party with notice from defeating the just rights of others. Among the building restriction cases, many are to be found where the restriction was on the land retained and was enforced. And see note to Korn v. Campbell, 37 L. R. A. (N. S.) at pages 23, 24.

In most of the cases cited the relation between the contracting parties was vendor and purchaser. Here it is that of landlord and tenant. If the principle will apply in the former case, it will a fortiori in the latter. Some courts have refused to go so far as the cited decisions. Witness Brewer v. Marshall, 19 N. J. Eq. 537, 97 Am. Dec. 679. But the objection to applying in that case the principle which the court recognized as established was the impolicy of permitting owners of land to incumber legal titles in perpetuity with such restrictions, citing Keppell v. Baily, frequently referred to as having been overruled. That question of policy is obviated where the restriction is to subsist merely for a limited term. Had a leasehold been involved in that case, it is apparent from the opinion that the decision would have been different. In addition to the distinction based on policy there is a technical distinction. Between landlord and tenant there is the privity of estate held essential if a covenant is to run with the land, while such privity is absent as between vendor and purchaser. See Brewer v. Marshall, supra; notes to Spencer's Case, 1 Smith's Lead. Cas. 85 et seq.; Burbank v. Pillsbury, 48 N. H. 475, 97 Am. Dec. at page 640.

Before leaving Brewer v. Marshall, supra, we note that there, as here, the restriction was upon land retained for the benefit of land disposed of by the covenant, and that that fact was not thought to vary the rule.

But among these decisions, all reaching the same result, perhaps the greatest diversity is one of theory. The more frequently stated principle is that above set forth; "preventing a party having knowledge of the just rights of another from defeating such rights." However, it has often been considered that the covenant created an easement or servitude entitled to protection in equity. A few courts have said shortly that the covenant ran with the land. These different views have no doubt sprung from the common effort of courts of equity to free themselves from the trammels of the technical rules of law, and to open the way for relief by injunction where the law would not give relief by damages. Courts of law and of equity naturally view the matter differently. The one is asked to award damages against a party for breach of a covenant to which he is not a party. The other is asked merely to protect a species of property right as against an interloper with notice. It occurs to us, therefore, that, as a practical working rule, the common result of these precedents, it might well be laid down that in equity some covenants may be regarded as running with the land which at law would not be so considered. If the covenant touches and concerns lands conveyed, demised, or retained, affecting its use or value, it will be considered in equity as running with the land and as binding it in the hands of an assignee, provided only that such assignee is not, for lack of actual or constructive notice, in the class of innocent purchasers. Case note, 21 Am. St. Rep. at pages 487, 488.

This being our conception of a covenant running with the land in equity, the following cases cited by appellants are not in point: Kramer v. Old, 119 N. C. 11, 25 S. E. 813, 34 L. R. A. 389, 56 Am. St. Rep. 650; Fleckenstein v. Fleckenstein, 66 N. J. Eq. 255, 57 A. 1028; Emmert v. Richardson, 44 Kan. 268, 24 P. 480; Gallup Electric Light Co. v. Pacific Imp. Co., 16 N. M. 86, 113 P. 851.

The covenants in those cases did not touch or concern land.

Other cases cited by appellants are Pythian Castle Association v. Daroux, 172 Cal. 510, 157 P. 594, and Clark v. Devoe, 124 N. Y. 120, 26 N. E. 275, 21 Am. Rep. 652. The former was in equity, and the latter at law. In both the decision turned upon the construction of the covenant, a question we shall now consider, having in mind the rule above stated that its meaning is to be derived from the intent of the parties as disclosed by the whole instrument and by resort, if necessary, to the surrounding circumstances.

■ Did the parties intend this as a mere personal covenant of appellants Rivera? Literally read it is no more. Yet we have seen that the failure by express language to bind the land or assigns will not be conclusive if other facts disclose the intent to do so. The covenant, even if personal to the Riveras, did touch and concern land. It gave added value to the leasehold. It decreased the value of the land retained. It limited its use. The right of the Riveras to engage in any business on any other premises was not affected. The important object, obviously, was not to protect appellees against competition by the Riveras. It was to reserve the land from any competitive use. On similar facts, and upon exactly these considerations, the Circuit Court of Appeals of the Sixth Circuit, Harlan, Circuit Justice, and Taft and Lurton, Circuit Judges, sitting, held the covenant binding upon the assignee, in American Strawboard Co. v. Haldeman Paper Co., supra. We follow that court of eminent jurists in so holding here.

This disposes of the greater number of appellant's points. The others will be briefly noticed.

■ It is contended that the court erred in awarding the injunction, in the absence of proof of damages. This is immaterial. Pom. Eq. Jur. § 1342.

The court found that appellees had made a large investment in reliance upon the covenant. Appellants contend that there is no evidence to support the finding. This matter we also consider immaterial on the same principle.

The point that the finding that before the making of the lease Rivera and Gonzales had been in business together on the demised land is unsupported by evidence seems not to be well taken.

It is objected that there is no evidence that Reynolds took with notice. The lease was recorded. It runs through all the decisions that constructive notice is sufficient.

■ At or about the conclusion of the evidence, appellees offered, and the trial court permitted, an amendment of the complaint, which action is here assigned as error. If the court did err, the point is not available. Appellants did not stand upon their objection, but thereafter stipulated with appellees that the evidence which had just been taken at the hearing on the order to show cause why temporary injunction should not be granted should stand as the evidence upon a trial of the cause, and for a submission of the cause on such evidence. It is doubtful, therefore, whether the amendment was a trial amendment and subject to the rules applicable in such cases. In any event, there was a waiver of the objection under the rule laid down in Thomas v. Pavletich, 31 N. M. 76, 239 P. 862.

Thus, having found no error in the judgment, it will be affirmed, and the cause remanded. It is so ordered.

BICKLEY, C. J., and PARKER, J., concur.