Saybrook Holding Corporation owns a block of stores at the corner of Park Place and Saybrook Place, Newark — seven facing on Park Place. Two, at the corner, were leased in 1922 to the complainant to be occupied only as "a fresh and dried fruit and nut store, poultry, ice cream, soda water and candy store," for a term of five years, with the right to renew for another five years. The lease contained a covenant that "the lessor hereby agrees not to rent any of the stores on *Page 4 
the Park Place side of the building of which the demised premises is a part, for a business of similar nature."
In 1929 the Saybrook corporation leased two adjacent stores on Park Place to be used and occupied only for "a modern drug store." The lease was made to one Bresler, a gobetween, who immediately assigned to the Gray Drug Stores, Incorporated. The complainant filed its bill promptly upon notice of the lease and obtained and served an order to show cause why an injunction should not issue. The drug store was opened for business the next day with the usual conspicuous and well appointed soda fountain where the usual soda fountain drinks, ice cream and luncheonette were served, constituting forty per cent. of the trade. Candy is an important item of sale. These features of the business, a few doors away, are in active competition with complainant's large soda fountain, ice cream (luncheonette) and candy trade — seventy per cent. of its business. The well established and prosperous business of the complainant, built up through seven years of patient industry, fell prey to the promoters of Gray Drug Stores, Incorporated, though they were charged with and actually had notice of the covenant. Their business is to buy or establish drug stores for sale. Shortly after they established this one they sold it by transfer of the corporation's capital stock. The Saybrook Holding Corporation's officials were not unmindful of the purpose to filch the complainant's trade and connived with them to evade the covenant by the subterfuge of leasing for amodern drug store. Both parties knew that that meant a soda fountain, ice cream, luncheonette and candy business with a drug store sign, and that is what it proved to be. Modern drug stores are no longer apothecary shops. Where compounding of drugs is not altogether abandoned the apothecary is but an incident, and it is common observation that the sale of drugs is negligible. To the extent that the letting for a modern drug store includes a letting for the sale of soda water, ice cream and candy, the lessor breached complainant's covenant not to let any other store for a "business of similar nature" to that which the complainant was restricted and as to which, among *Page 5 
tenants, it acquired an exclusive right. It was this right that the covenant was intended to protect. That the invaders called themselves a modern drug store as a cloak to hide their purpose to compete with the complainant in its principal line of trade, now accomplished, cannot be denied and they cannot escape condemnation by the mere adoption of a title that may not be descriptive of the complainant's business. Names and titles count for little. Equity looks through them to stop the fraud. An illustration is the case of Waldorf-Astoria Segar Co. v.Salomon, 95 N.Y. Supp. 1053; affirmed, 184 N.Y. 584, where the lessor covenanted against leasing an adjoining store for the wholesale and retail cigar and tobacco business and subsequently leased the store for a branch grocery store, in which the tenants carried on as a part of their business the wholesale and retail sale of cigars, and were enjoined.
The Gray Drug Stores, Incorporated, in seeking to escape the covenant contends that it was personal to the landlord; that the covenant bound the lessor not to let, but did not bind the tenant not to use the premises for a competing business. The tenant participated in the fraudulent letting with full notice of the complainant's covenant which it was in conscience bound to respect, not to violate. As to it the covenant not to let implied as well, not to use. Where conscience forbids equity enjoins.Brewer v. Marshall, 19 N.J. Eq. 537; Kirkpatrick v. Peshine,24 N.J. Eq. 206; Coudert v. Sayre, 46 N.J. Eq. 386.
Counsel state that after a careful research they have discovered no guiding case in this state and referred to English authorities. That has not been verified. There may be no decision involving the exact point, but the underlying principle has been discussed frequently and with considerable elaboration.
The defendants cite Brigg v. Thornton (1904), 1 Ch.Div. 386. That was a case of a landlord covenanting not to let other portions of his premises for the same business to be carried on by the plaintiff, his lessee, which was breached in a subsequent letting. The vice-chancellor granted an injunction against the second tenant using the premises for the *Page 6 
competing business. On appeal the decree for injunction was reversed strictly on the case made by the pleadings because the plaintiffs did not impeach the second letting but treated it as an existing fact and sought relief only against the use by the second tenant which the appellate court found, in the circumstances, to be unavailable in the absence of a covenant against use. The court, however, pointed out that the plaintiff might have had relief against the second tenant's occupancy had he attacked the lease and the trial court had declared the letting unlawful. The decision did not go to the merits; they appear to have been turned aside in the devotion to practice. Equity is administered by our courts not so much on technical niceties of pleadings and proof as it is to thwart fraud and serve justice, and as a precedent the cited case does not appeal to our sense of judicial duty. However, the complainant's case is not open to criticism upon the point upon which the English case turned, for it assails the lease and prays that it be canceled or modified to include an appropriate restriction.
In Holloway Brothers, Ltd. v. Hill (1902), 2 Ch.Div. 612, a second tenant was enjoined against use of leased premises for a tailoring business in violation of a covenant to a prior tenant. The covenant was against the use and the court applying the familiar doctrine of Tulk v. Moxhay, 2 Ph. Ch. 774, said, "a negative bargain, that is a bargain against particular use of land retained, on sale or lease of part of an estate, may be enforced by any person entitled in equity to the benefit of the bargain against any person bound in equity by notice of it, either express or to be imputed at the time of acquisition of his own title. This is a right which may be enforced by virtue of the equitable doctrine applicable, and does not depend upon the existence of a covenant running with the land, or upon the existence of any right to relief under the common law."
In Fitz v. Iles (1893), 1 Ch. 77, the landlord leased premises for a coffee house and covenanted not to let any shop on the same road for a coffee house. The second and *Page 7 
offending tenant made a corresponding covenant to the lessor not to use, and the court enforced the tenant's covenant.
In Drew v. Guy (1894), 3 Ch. 25, the lessor's covenant was against use and the violation was enjoined.
It will be observed that the English cases cited deal with covenants against use of leased premises but that does not speak that the results would have been different had they dealt with covenants against letting for a competing business of which a subsequent tenant had notice.
In Waldorf-Astoria Segar Corp., supra, the owner leased to plaintiff a store in his building to be used for the purpose only of wholesale and retail sale of cigars and tobacco and smokers' articles. The owner covenanted not to rent any other portion of the building and premises to anyone "for the purpose of wholesaling and retailing cigars and tobacco." He later rented an adjoining store to Acker Merrill Condit, wholesale and retail grocers, who covenanted to use it as one of their branch grocery stores and for no other purpose. The firm sold cigars wholesale and retail as part of its regular business of wholesale and retail grocers and they were enjoined as breaching the landlord's covenant with the plaintiffs of which they had notice. The case is directly in point.
The complainant claims that its lease was verbally modified to allow it to sell luncheonettes. If that be true it was permissive and did not extend the protection of the covenant to that article.
The complainant is not entitled to a cancellation of the lease to the Gray Drug Stores, Incorporated, nor to have introduced into it a restrictive covenant. Adequate relief will be afforded by enjoining the company from selling soda water, ice cream and candy. Decree accordingly. *Page 8