STATE, PLAINTIFF-APPELLEE, v. BUNIN, DEFENDANT-APPELLANT.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 26223. Decided January 31, 1963.

*Mr. John F. Ray, Jr.*, director of law, and *Mr. Robert L. Steele*, assistant director of law, for plaintiff-appellee.

*Messrs. Lane, Krotinger & Santora, Mr. Morton L. Stone*, of counsel, for defendant-appellant.

ARTL, J.  This is an appeal on questions of law from a judgment of conviction of the appellant by the Municipal Court of Euclid, Ohio, for a violation of Section 3773.24, Revised Code, commonly called the Sunday Closing Law.

The affidavit of the City of Euclid, charging the appellant with the crime, reads, in part, as follows:

"* * * Max Bunin, Vice President in charge of Retail Stores of Standard Drug Company, Inc., d. b. a. Revco Discount Drug Centers, Inc., at 22388 Lake Shore Boulevard, Euclid, Ohio, on said 4th day of February, 1962, being the first day of the week commonly called Sunday, did unlawfully suffer or permit a place of business located at 22388 Lake Shore Boulevard, Euclid, Ohio, to be open for the transaction of business, in violation of Section 3773.24, Revised Code."

The matter was submitted upon agreed statements of facts, briefs and arguments of counsel.

The facts stipulated by counsel for the respective parties are as follows:

"1. The Standard Drug Company, an Ohio corporation, is a drugstore as defined in Section 4729.02 (A), Revised Code, and has been for more than sixty (60) years and is duly authorized to engage in such business by its Articles of Incorporation and has all necessary licenses required by the State of Ohio and the Federal Government.

"2. Max Bunin is Vice President in charge of retail stores of the Standard Drug Company doing business as Revco Discount Drug Centers, including the Revco Discount Drug Center at 22388 Lake Shore Boulevard in the City of Euclid, Ohio.

"3. On March 11, 1962, a Sunday, Max Bunin caused the said drugstore to open its doors for the transaction of business.

"4. On March 11, 1962, Captain Orville Willcocks of the Euclid Police entered the Revco Discount Drug Center at 22388 Lake Shore Boulevard and purchased a bottle of Vitalis Hair Tonic. On the 14th of March, 1962, Captain Willcocks appeared before Thomas A. Jones, Clerk of the Euclid Municipal Court and swore out an affidavit charging Max Bunin with violation of Section 3773.24, Revised Code.

"5. There are approximately six hundred twenty-three drugstores located in Cuyahoga County (Greater Cleveland). Each Sunday in Cuyahoga County approximately twenty-two thousand prescriptions are filed (sic) by drugstores. Approximately five hundred sixty drugstores open for business on Sundays in this county. Generally those pharmacies which are located in medical buildings or the so-called 'ethical pharmacy' traditionally close on Sundays.

"6. The sale of prescriptions, drugs and proprietary medicines is a necessity falling within the exceptions of Section 3773.-24, Revised Code.

"7. Frequently doctors, hospitals and rest homes obtain drugs, proprietary medicines and hospital supplies from drugstores on Sunday.

"8. It is necessary and essential that drugs, proprietary medicines and hospital supplies be available on Sundays.

"9. Dr. Harold C. Epstein, a duly licensed physician, the Director of the Cleveland Poison Center and Pharmacists, would testify that the contents of prescriptions can be definitely identified only by the number on the prescription. When persons, especially children, take medicines not prescribed for them or dangerously large doses, only the drugstore is able to state what was contained therein so that the proper medical treatment can be administered. Frequently, pharmacies are called for such information which may mean life or death.

"10. The possibility of illness or accident creating an immediate need for drugs or medicine is present on Sunday just as any other day. Doctors within the community give emergency prescriptions on Sunday as on any other day. Such

emergency needs are normally filled by drugstores and on occasion can only be filled by drugstores.

"11. Pharmacies and drugstore owners uniformly testify to the fact that it is economically unfeasible for a drugstore to remain open for the filling of prescriptions and the sale of medicines alone, although it is physically possible to so open drugstores."

It should be noted that the appellant does not contest the constitutionality of the statute involved. For the purpose of this opinion, the parties will be referred to herein as they stood in the trial court.

The language of Section 3773.24, Revised Code of Ohio, upon which the prosecution herein was based, provides as follows:

"No person, firm, or corporation shall engage in common labor or suffer or permit a building or place to be open for transaction of business, or require a person in his employ or under his control to engage in common labor or to open a building or place for the transaction of business on Sunday. In prosecutions under this section complaints shall be made within ten days after a violation.

"This section does not apply to work of necessity or charity, and does not extend to persons who conscientiously observe the seventh day of the week as the sabbath, and abstain thereon from doing things prohibited on Sunday.

"This section shall not apply to:

"(A) Traveling or the providing of services and commodities incidental thereto;

"(B) Recreation, sports, amusements, entertainment, or exhibitions or the providing of services and commodities incidental thereto;

"(C) Fairs held under the authority of the state or a political subdivision, or independent fairs, or the providing of services and commodities incidental thereto.

"(D) The operation of publicly owned places of entertainment, recreation, or education, by a public officer, concessionaire, exhibitor, or employees of all or any of them, or any other person, or the providing of services and commodities incidental thereto."

The issue to be determined by this court, as urged by the defendant, is as follows:

Whether or not a bonafide drugstore is entitled to open its doors for business on a Sunday?

The prosecution's version of the issue is considerably different. The City contends that defendant-appellant "* * * admits that he suffered and permitted a place to be open for business on Sunday. There is no evidence that the appellant conscientiously observes the seventh day of the week as the Sabbath. Therefore, all that remains for this Court to determine is whether or not the business transacted fell within an exception set forth in the statute.

"More succinctly, the Court is asked to determine whether or not the sale of a bottle of hair tonic in a drugstore is a work of necessity."

The Ohio statute does not expressly authorize drugstores to remain open for business on Sunday. If there is any sanction for drugstores opening on Sunday, it can only arise from an interpretation of the exception relating to "work of necessity" contained in the second paragraph of the statute.

Section 4729.02 (A), Revised Code, defines a drugstore as follows:

"(A) A retail drugstore is any room, rooms, or place of business wherein prescriptions are compounded or from which drugs, poisons, chemicals, or pharmaceutical preparations shall be advertised, sold, offered, or displayed for sale at retail, or upon which or in which the advertising, listing or classification of, or as a sign any pharmaceutical insignia or the words, 'pharmacy,' 'drugs,' 'drugstore,' 'Pharmacist,' 'druggist,' 'Pharmaceutical chemist,' 'apothecary,' 'drug sundries,' 'medicine,' or any of these words or their equivalent in this or any language are displayed."

The question, therefore, arises—Is a bonafide drugstore a "work of necessity"? If it is, to what extent may a bonafide drugstore, *under Ohio law*, sell the goods, wares and merchandise it has on hand in the ordinary course of its business on Sunday?

The prosecution does not challenge the right of the appellant to be open for the transaction of such business as can be

affirmatively shown to fall within the exception of a "work of necessity," but in their view, the specific transaction shown to have been consummated, the sale of a bottle of "hair tonic," does not constitute a necessity, nor was there any evidence that it was.

The question of whether a drugstore is a work of necessity has been up before some of the trial courts in various parts of the state. Two of the most recent cases were decided by the Municipal Court of Toledo, Ohio, on July 31, 1962, entitled *"State* v. *Walgreen Company, Inc.,"* the other *"State* v. *Lane Drug Company."* In the former case, the affidavit charged the sale of *"*Top-Coat Hangers,*"* in the latter, Lane Drug sold a can of leather cleaner, saddle soap and car wax.

The Municipal Court of Lorain, Ohio, in March, 1960, decided two cases: *State* v. *Alexander Nicholas Radovich* and *State* v. *John B. Calsin,* involving drugstores. Appellant's brief does not disclose specifically what articles were sold, but the opinion of the court quoted indicates that whatever the articles were, they were not medicines or drugs.

In October, 1957, the Municipal Court of Cleveland decided the case of *City of Cleveland* v. *Carlyle Evans,* a drugstore case. Here again, the article sold according to the brief was not identified further than to say that it was not a medicine or a drug.

The Columbus Municipal Court in *State* v. *McClung,* Case Nos. 3359 and 3360, held on November 6, 1959, in an unreported decision, that the sale of a magazine in a drugstore was work of necessity.

In each of the foregoing cases, the trial courts reached the conclusion that a bonafide drugstore is work of necessity and, as such, not amenable to the statute.

That, however, was not the total extent of their determination. They concluded in each instance that since the defendants operated bonafide drugstores, they were at liberty to sell anything found in their salesrooms or upon their shelves from coat hangers to car wax and this, upon the premise, *that these items of merchandise were incidental to the business of a modern drugstore,* and therefore, discharged the defendants in each case.

This is exactly the view urged by the defendant in the case before us. He argues that

"The defendant's employer, The Standard Drug Company, is a drugstore historically and as defined by statute. The Standard Drug Company employs pharmacists who are present in its store whenever it is open. The drugstore is prepared to and does serve residents of the City of Euclid with necessary and emergency medical aid. The store is open for this purpose. The corporation was incorporated for this purpose.

"The fact that defendant's employer, as a result of the change in economic methods of operation, sells items other than drugs and medical supplies does not make the store any less a drugstore."

In the modern concept of a drugstore, as determined by the courts of other jurisdictions, it is stated in *Jeter* v. *Windle*, 229 Ark., 948, 319 S. W. (2d), 82 (1959):

"It is common knowledge that such business (drugstore) is not confined to operating an apothecary shop alone but that drugstores, as a general rule, furnish grill and fountain services and also sell various sundries such as stationery, magazines, newspapers, etc."

Again, in *Tynes* v. *Kelly*, 116 S. (2d), 54, at page 57, it is said:

"'* * * In its ordinary signification in present day America, the term 'drugstore' denotes an emporium devoted to the sale of many other things besides drugs, such as notions, sodas, and beverages, toys, lunches, cosmetics, etc. * * *."

Perhaps this was most vividly expressed in *Crest Drug Store* v. *Levine*, 142 N. J. Eq., 652, 61 A. (2d), 190 (1948). The court stated at pages 191 and 192:

"What is a 'modern drugstore'? What are 'other commodities incidental to the maintenance of a modern drugstore'? These are questions properly and peculiarly for decision by a law court. Courts are not to shut their eyes to the realities of modern business life. *Barkin Construction Co.* v. *Goodman*, 221 N. Y., 156, 161, 116 N. E.. 770. Courts of this state have had occasion to consider 'modern drugstores.' In *Packard-Bamberger & Co.* v. *New Jersey Board of Pharmacy*. 134 N. J. L.. 381, 48 A. (2d), 199, 201, affirmed 135 N. J. L., 282. 51 A. (2d). 239, *Chancellor Oliphant*, then Supreme Court Justice, said

'* * * but we further recognize that there has been a great change in that (pharmacy) business over the years, * * * Often the drug and prescription business of a pharmacy is in fact a separate department in a large establishment selling many other articles in numerous departments. * * * It is common knowledge as well as disclosed by the record that many drugstores in this State are department stores to a greater or less degree.' In *Aiello Bros.* v. *Saybrook Holding Corp.*, 106 N. J. Eq., 3, 149 A., 587, 588, the late Vice Chancellor Backes observed that 'Modern drugstores are no longer apothecary shops. Where compounding of drugs is not altogether abandoned, the apothecary is but an incident, and it is common observation that the sale of drugs is negligible.' "

Does the Ohio Statute lend itself to the interpretation put upon it by the trial courts above noted and as contended for by appellant?

The language of the first paragraph is strictly prohibitory. It prohibits in explicit language the engagement in common labor, the opening of a building or place to be open for transaction of business, or requiring an employee to do either.

The second paragraph again in explicit language states: "This section does not apply to *work of necessity* or charity." (Emphasis supplied.)

The remainder of the statute contains the language:

"This section shall not apply to:

"(A) Traveling or the providing of services and commodities incidental thereto;

"(B) Recreation, sports, amusements, entertainment, or exhibitions or the providing of services and commodities incidental thereto;

"(C) Fairs held under the authority of the state or a political subdivision, or independent fairs, or the providing of services and commodities incidental thereto.

"(D) The operation of publicly owned places of entertainment, recreation, or education, by a public officer, concessionaire, exhibitor, or employees of all or any of them, or any other person, or the providing of services and commodities incidental thereto."

Thus, it is obvious that modern drugstores, as such, are not excepted from the operation of the statute and the only justification for their operation on Sunday must be found, if at all, in an interpretation that drugstores in the sale of drugs, medicines or items of pharmaceutical value are *work of necessity*. With that conclusion we can and do agree.

But, are we free by judicial interpretation to extend the scope of this statute? May we by judicial interpretation add to the statute by extending work of necessity, the language adopted by the legislature to include "things incidental to the operation of a drugstore" if such is determined to be work of necessity?

In a discussion of the subject of Sunday Closing Laws in 83 Corpus Juris Secundum, Title, Sunday, Sec. 14, at page 824, (b), Drug Stores, we find the following:

"The extent to which drugstores generally, or sales of goods therein, are within exceptions to the Sunday laws depends on the language of the exceptions."

In the discussion under this subheading, it is stated:

"The operation by a druggist of a drugstore on Sunday is within prohibitions of the pursuit of work or business of one's ordinary calling or of keeping open shop. Exceptions in favor of works of charity or necessity do not extend to all sales of drugs or medicinal preparations, merely by reason of their character as such, and such sales, when otherwise prohibited, are permitted to be made under such exceptions only when they are in fact matters of necessity or charity, under the circumstances as they exist. * * *"

It is clear that the legislature intended to prohibit common labor and transaction of business on Sunday. They wrote into the law the exception in Paragraph 2, to-wit: work of necessity and charity. We must indulge in the presumption that the legislature was cognizant of the modern complexity of drugstore operations, as well as the necessity of the purchase of drugs and medicines on Sunday. It is fair to reason that the legislature was cognizant of the fact that where drugstores are open on Sunday and confine their business activities to the sale of necessary drugs, medicines and pharmaceutical aids, they would be regarded as within the exception.

On the other hand, it is likewise reasonable to believe that the legislature did not intend, under the guise of necessity, to authorize drugstores to engage in the business of "department stores, to a greater or less degree" as defined by the court in the quoted definition heretofore set forth.

We are strengthened in this view of the situation when we consider that in the year 1959 the legislature further amended the statute in question by adding the four categories of business included in subsection (A) through (D) of the statute. Here it should be especially noted that the legislature not only excepted from the operation of the statute the four specific types of business, but in each instance, added the significant language *"or the providing of services and commodities incidental thereto;"*. This significant language is lacking in the case of the exception of "work of necessity or charity."

The rule has been frequently stated to be:

"It is, of course, the duty of the court to ascertain and determine the true meaning of the language used in the exception, and the exception must be limited to those cases which are clearly within its provisions. In the absence of explicit language, an exception should not be carried further than the spirit of the law requires, or enlarged from considerations of hardship or inconvenience." 50 Ohio Jurisprudence (2d), 305, Title: Statutes, Sec. 321.

In his brief, defendant's counsel refers to the opinion of Kovachy, J., of this court, delivered in the case of *City of Euclid, Ohio,* v. *John MacGillis,* 179 N. E. (2d), 121. In his brief, he argues:

"In further discussion of this ordinance (which is identical to the Sunday Closing Statute), he pointed out that it was the legislative intent to permit 'persons employed by or engaged in a business or transaction having to do with recreation, sports, amusements, entertainment or exhibitions * * * (to) perform their work and operate such business on Sunday.' *Of course, the same interpretation is applicable to the 'necessity' exception which applies to the defendants in the case at bar."* (Emphasis supplied.)

With this latter conclusion, we cannot agree. The *MacGillis*

*case* involved an interpretation of a sale made allegedly under the provisions of the exception to subsection (B) of the statute dealing with persons employed by or engaged in a business or transaction having to do with recreation, sports, amusements, entertainments or exhibitions.

The opinion of Kovachy, J., quite clearly states that the court's interpretation of the statute is limited to Exception (B) and "that the remaining exemption section, as well as the prohibitory first paragraph of the ordinance, are not in issue and it is not within the power or the authority of the court to attempt to interpret them."

We, therefore, reiterate that the exceptions (A) through (D) of the Statute, by express terms and language, permit those business places authorized to transact business on Sunday, specifically authorize the sale of merchandise *incidental* to such business. The exception relating to "work of necessity" contains no such authority.

We, therefore, conclude that the operation of a drugstore, within the scope defined in Section 4729.03 (A), Revised Code, is to be construed as work of necessity. We may not and do not in our interpretation extend the scope and meaning of the operation of a drugstore to include the sale of commodities incidental to the operation of a drugstore business which do not fall within the category of necessities within the language of Section 4729.02 (A), Revised Code.

It is our view that if the scope and meaning of this exception is to be extended that it is the function of the legislature. The courts have no right to invade this function of the legislature.

There is no evidence that the sale of the commodity in this case was a necessity. Under the circumstances, the judgment of the trial court is affirmed.

Judgment affirmed. Exceptions noted.

Hurd, P. J., Corrigan, J., concur.