GILLEN-CROW PHARMACIES, INC., APPELLEE, *v.* MANDZAK ET AL.;
FASHION FAIR, INC., ET AL., APPELLANTS.

[Cite as Gillen-Crow Pharmacies, Inc., v. Mandzak, 5 Ohio St. 2d 201.]

(No. 39503—Decided March 16, 1966.)

*Messrs. Frost & Jacobs* and *Mr. John C. Egbert, Jr.*, for appellee.

*Messrs. Kasfir, Heckerman & Hood* and *Mr. Harry Kasfir*, for appellant Fashion Fair, Inc.

*Messrs. Aronoff, Rosen & Lerner*, for appellant The Fair Drug Company.

ZIMMERMAN, J. It is disclosed by the pleadings and the bill of exceptions that on February 13, 1959, one Mike Mandzak acquired by deed a tract of land in the city of Middletown, Ohio, for the purpose of commercial development. On August 31, 1959, Mandzak and one Lloyd Miller, who was interested in the development, leased a part of the property to plaintiff. Wildwood Center, Inc., became the owner by assignment of this property, and in March of 1962 it entered into a further lease with plaintiff, providing for additional space immediately adjacent to that already leased to plaintiff with an additional rental charge. In April 1962, Stevens Realty Company, of which Mandzak was an officer, acquired by deed from Mandzak property adjoining that leased to plaintiff, and later the same month it leased such property to Goldbar, Inc., which subsequently changed its name to Fashion Fair, Inc. Then, in March 1963, Fashion Fair subleased a portion of its leased premises to The Fair Drug Company, a defendant herein, for the stated purpose of selling, among other things, health and beauty aids, patent medicines and cosmetics. In the lease from Mandzak and Miller to plaintiff the following restrictive clauses were inserted at plaintiff's insistence:

"3. Any property owned by lessors within one-half (½) mile shall not be sold, leased, or in any way demised to any drug store, *or any other business which sells drugs or prescriptions.* [Italicized words were insterted in typed lease by interlineation.]

"4. No property owned by lessors within one-half (½) mile shall be sold, leased, or in any manner demised to any type of business with fountain service, except a restaurant or department store."

In the lease from the Stevens Realty Company to Goldbar, Inc. (later Fashion Fair), it is provided under article XXIV,

section 24.01, that with the written consent of the lessor a sub-lease may be made to a firm or corporation "whose business is not prohibited by any lease from lessor to any other tenant in the 'shopping center' in existence and effect at the time lessee desires to effect such assignment or sublease."

Plaintiff, in seeking the injunction, asserts that the Fair Drug Company, by permission and sanction of Fashion Fair and with actual knowledge on the part of both of the existence and terms of restrictive clause No. 3 quoted above, has been selling, since April 1963, drugs in violation of such restrictive clause and should be enjoined therefrom to protect plaintiff's right to be free from competition.

On the other hand, in resisting the injunction, Fashion Fair and the Fair Drug Company make the following claims:

1. The provisions of plaintiff's lease with Mandzak and Miller, upon which its action is based, represent a personal covenant not binding on them.

2. The term, "drugs," as used in plaintiff's lease does not include the items sold by the Fair Drug Company.

3. Neither Fashion Fair nor the Fair Drug Company had actual or constructive notice of the restrictive clause contained in plaintiff's lease.

4. Plaintiff, by entering into a new lease with its lessor in March 1962, surrendered the original lease and rendered the covenant therein inoperative.

5. Plaintiff has suffered no irreparable injury, has an adequate remedy at law and, therefore, is not entitled to injunctive relief on any basis.

It is apparent that the italicized portion of restrictive clause No. 3 in the then existing lease from Mandzak and Miller to plaintiff, as set forth above, was inserted to induce plaintiff to lease the premises and to preclude any competitive business nearby. It would seem clear that such restrictive clause is personal in nature and does not constitute a covenant running with the land since it is not contained in an instrument in Fashion Fair's chain of title. The trial court expressly so found.

No useful purpose would be served by detailing the testimony relative to the intended meaning of the term, "drugs," as used in restrictive clause No. 3, and as to whether the defend-

ants Fashion Fair, Inc., and the Fair Drug Company had actual notice of the existence and extent of such term. The evidence on these points is in conflict.

There was testimony in support of plaintiff's position that the term, "drugs," as used in the restrictive clause of its original lease meant and was intended to mean any substance or mixture ordinarily sold in drugstores and designed for use in the treatment, cure, mitigation or prevention of diseases of human beings or other animals—those substances, liquid or solid, consumed internally or applied externally to the body as remedial, curative or preventive agencies.

Testimony favorable to defendants was to the effect that the word, "drugs," embraced and was intended to embrace only those substances mixed or compounded by a registered pharmacist upon the prescription of a duly licensed member of the medical profession, or those preparations which might lawfully be sold by a pharmacist without a prescription.

Plaintiff's witnesses testified further that, in conferences among the interested parties and by correspondence, the restrictive covenant was discussed and that the meaning of the term, "drugs," was understood to correspond with the definition of that term as asserted by plaintiff.

Defendants Fashion Fair and the Fair Drug Company deny that they had actual or constructive knowledge of restrictive clause No. 3 or that they were bound thereby.

At one place in the trial court's opinion, the flat statement is made:

"It is our opinion that the plaintiff has sustained the burden of showing that Fair Drug Company had actual knowledge of the existence of the covenant so as to make it enforceable against it, if otherwise applicable."

In another part of the opinion both Fashion Fair and the Fair Drug Company are found to have had actual notice of the restriction and its intended extent. That opinion quotes and relies on the statement appearing in 15 Ohio Jurisprudence 2d 119, Section 128, as follows:

"* * * the rule is well established that restrictions as to the use of property * * * are binding upon, and capable of being enforced in equity against, all those who take the estate with

notice of such restrictions, though the agreement or covenant is merely personal in its nature, and though it does not purport to bind assignees."

And see 97 A. L. R. 2d 76, where it is said:

"It is generally accepted that a restrictive covenant in a lease, which is designed to prevent competitive use of the premises retained by the covenantor, is enforceable in equity by way of injunctive relief as against all parties who take the restricted premises with notice of the restrictive covenant. * * *"

Such quotations are in accord with the generally prevailing rule. 51 Corpus Juris Secundum 880, Landlord and Tenant, Section 247.

In the first instance, it is for the trial court when it is the trier of the facts to make determinations as to the weight to be given the evidence and as to the credibility of witnesses. It is at liberty to believe or disbelieve a witness and accept or reject his testimony. In making its findings, the court may consider the demeanor of the witnesses and the manner in which they testify, their connection with or relation to the parties to the action and whatever interest they may have in the outcome of the case.

This the trial court obviously did and, in a lengthy opinion, found the issues in favor of the plaintiff. On an appeal on questions of law and fact and upon a consideration *de novo* of the evidence presented to the court below, plus additional testimony in the form of depositions, the Court of Appeals reached the same conclusion as the trial court and entered its judgment accordingly.

This court is not required to and does not ordinarily weigh evidence, and a situation of the kind now before us comes within the rule that where similar factual findings are made by the Court of Common Pleas and the Court of Appeals on appeal they must be accepted by this court unless there is *no* evidence of probative value to support them. *McNab* v. *Board of Park Commrs. of Metropolitan Park Dist. in Cleveland,* 108 Ohio St. 497, 500, 141 N. E. 332; *Peer* v. *Industrial Commission,* 134 Ohio St. 61, 67, 15 N. E. 2d 772, 775; 3 Ohio Jurisprudence 2d 782, Section 806.

In an action seeking injunctive relief, the burden rests on plaintiff to make a case which commends itself to the conscience of a judge, sitting as a chancellor, that the relief sought is just and equitable, and that in good conscience and upon application of equitable principles the injunction should be granted. Both lower courts presumably applied this principle and decided in plaintiff's favor. Because of the difference in factual aspects, the present case is not controlled by *Bevy's Dry Cleaners & Shirt Laundry, Inc.,* v. *Streble,* 2 Ohio St. 2d 250, 208 N. E. 2d 528.

A majority of this court finds no sufficient reason to interfere with or overturn the judgments of the courts below, and the judgment of the Court of Appeals is, therefore, affirmed.

*Judgment affirmed.*

TAFT, C. J., MATTHIAS, O'NEILL and HERBERT, JJ., concur.
SCHNEIDER and BROWN, JJ., dissent.