## Cranes-Mayos Clothes, Inc. v. Street Road Shopping Center, Inc.

*William J. Carlin,* for plaintiff.

*Claire G. Biehn, Frank N. Gallagher* and *Robert W. Valimont,* for defendants.

GARB, J., February 17, 1970.—This is an action in equity in which plaintiff seeks injunctive relief against the various defendants together with damages allegedly incurred by plaintiff as the result of the asserted conduct of the various defendants. Upon the filing of the complaint and entry of order of this court, a hearing was held on January 8, 1969, for the purpose of determining whether a special injunction should issue. At the termination of the said hearing, the application for special injunction was refused and denied, whereupon the various defendants filed answers to the complaint, two of the defendants filed new matter, to which plaintiff filed replies, and the pleadings thereupon being closed the matter was heard by this court on October 8, 1969. The various parties have filed requested findings of fact and conclusions of law, together with briefs, and based upon the foregoing we make the following

## FINDINGS OF FACT

1. Plaintiff herein is Cranes-Mayos Clothes, Inc., (Cranes), a Delaware corporation, with principal offices located at 588 Broadway, New York, N. Y., and with a place of business located in Bucks County Mall, Feasterville, Bucks County, Pa.

2. Defendant, Street Road Shopping Center, Inc., (Street Road), is a Pennsylvania corporation, with offices located in the Bucks County Mall, Feasterville, Bucks County, Pa.

3. Defendant, Santerian's, a partnership, has a place of business located in the Bucks County Mall, Feasterville, Bucks County, Pa.

4. Defendant, John S. Milne, Inc., (Milne), is a Pennsylvania corporation, with a place of business located in the Bucks County Mall, Feasterville, Bucks County, Pa.

5. The Bucks County Mall is a shopping center developed and owned by defendant Street Road, located on Street Road approximately 800 feet east of the intersection of Street Road and Bustleton Pike, Feasterville, Bucks County, Pa., with approximately 900 front feet on Street Road and comprising approximately 36 stores.

6. On or about October 22, 1965, plaintiff and defendant, Street Road, entered into a written agreement, whereby defendant, Street Road, leased to plaintiff a store or store area, comprising approximately 3,500 square feet of space in the said shopping center, described as space no. 20, for a term of 15 years at an annual rental as set forth in the said lease agreement.

7. Among the various terms of the aforesaid lease agreement it was provided that plaintiff shall use the premises for the purpose of the retail sale of men's apparel, including men's suits, coats, shirts and related items, and shall use the leased premises solely for the purpose of conducting the business of a retail store for the sale of men's and boys' apparel, including haberdashery, sportswear, accessories and incidental men's jewelry and related items.

8. Under section 3.01(a) of the aforesaid lease agreement it was provided, in relevant part, as follows:

"Landlord covenants and agrees that it will not rent any space in the Shopping Center for which the demised premises form a part to any tenant whose business shall be the sale of men's and boys' apparel including haberdashery, sportswear, accessories, incidental jewelry and related items. Except that the Landlord may rent one other store having an area not in excess of 3,500 square feet for such purposes to other than Adams Clothes. This restriction shall not apply to the Variety Store, or any leases with any department stores, or any stores to be built on upper level, at a later Date."

9. On or about September 1, 1967, defendant, Street Road, did enter into an agreement with defendant Santerian's under the terms of which a certain store area in the shopping center was leased to Santerian's, and Santerian's did begin operation of a retail store for the sale of wearing apparel on or about November 26, 1967.

10. Santerian's is a store engaging in the sale of clothes for both men and women, boys and girls, infants and children, of a total store area of approximately 4,376 square feet, 400 feet of which is utilized for the purpose of the sale of men's and boys' clothing, and approximately 22 percent of the gross business of the entire store being derived from the sale of men's and boys' clothing.

11. Paragraph 31 of the Santerian's lease provides as follows:

"Tenant shall use the leased premises solely for the purpose of conducting the business of retail sale of wearing apparel of all kinds and related items. It is agreed that the emphasis shall be on the sale of Children's goods although ladies, men's and young men's wear of all kinds will be sold without reservation except for the following:

"(a) The store shall not be advertised in such a way as to imply it is primarily a Ladies Apparel Store.

"(b) The portion of the store used in the sale of men's and young men's wear shall not exceed two thousand five hundred (2,500) square feet."

12. On or about August 13, 1968, defendant, Street Road, did enter into an agreement with defendant, Milne, for the lease of a certain store premises of approximately 2,000 square feet, being known as space no. 12 for a term of 15 years, at a rental stated therein and, pursuant thereto, Milne did begin the operation of a store for the sale of men's and boys' wear on or about November 1, 1968.

13. Under section 3.01 of the aforesaid lease between defendants, Street Road and Milne, it is provided, inter alia, as follows:

"Tenant shall use the leased premises solely for the purpose of conducting the business of: the sale of men's and boys' wear and accessories, provided that men's sport coats shall not be sold of a quality lower than 'Clothing make' . . . The Tenant agrees that the type of store they will operate is that which is normally regarded as a 'Better Men's and Boys' Wear shop."

14. None of the foregoing lease agreements was lodged or entered of record in the Office for the Recording of Deeds by and for Bucks County.

15. Prior to the execution of their leases aforesaid, neither defendants, Santerian's nor Milne, had any actual knowledge of the terms or conditions of the lease agreement entered into between plaintiff and defendant, Street Road.

## DISCUSSION

For reasons that shall become apparent hereinafter, we find it unnecessary to analyze and attempt to

construe the specific language of the restrictive covenant in plaintiff's lease. Suffice it to say that, conceivably, that language is capable of such construction as to find that neither Santerian's nor Milne are in violation of it. The Milne store, having an area of less than 3,500 square feet, could well qualify as the one exception allowable by the restrictive covenant. Conceivably, Santerian's is not in violation of the restrictive covenant if the language of the restrictive covenant "landlord covenants and agrees that it will not rent any space in the Shopping Center for which the demised premises form a part to any tenant whose business shall be the sale of men's and boys' apparel" is to be interpreted as a store the primary purpose of which is the sale of such apparel. It likewise might be a variety or department store. However, in view of the law regarding restrictive covenants as applied to the facts of this case, we do not deem it necessary to reach the question of interpretation of this particular restrictive covenant.

Although clearly restrictive covenants are valid and enforceable so long as they do not result in an unreasonable restraint of trade (Hoffman v. Rittenhouse, 413 Pa. 587 (1964)), inasmuch as they constitute land use restrictions, they are not favored in the law and are, therefore, generally strictly construed: Great A. & P. Tea Co. v. Bailey, 421 Pa. 540 (1966). As a general rule of contract interpretation, the intention of the parties at the time of the execution of the contract prevails and this same rule applies to the interpretation of restrictive covenants. Nothing will be deemed a violation of such a restriction that is not in plain disregard of its express terms. Every restriction will be construed most strictly: Great A. & P. Tea Co. v. Bailey, id.

We have found scant authority directly on point in Pennsylvania.[1] A lessee with a restrictive covenant in his lease can enjoin a subsequent lessee from his lessor from using his premises in violation of the restrictive covenant only where subsequent lessee had notice of the restrictive covenant at the time he entered upon the lease: Rosenthal v. Friedman, 13 Del. 431 (1915). Cf. The Great Atlantic and Pacific Tea Company, Inc. v. Stadium Shopping Center, Inc., 44 D. & C. 2d 61 (1966). In Tucker v. Pilgar Corp., 46 Del. Co. 172 (1958), the court dismissed defendant's preliminary objections in the nature of a demurrer to plaintiff's complaint, holding that equity has jurisdiction and that plaintiff had stated a cause of action where he purports to enforce a restrictive covenant in his lease, and he pleads the covenant and that the lessor is about to enter into a lease with a subsequent lessee in violation of the restrictive covenant. See also Scooper Dooper Ice Cream Shops, Inc. v. Providence Developers, Inc., 46 D. & C. 2d 230 (1968).

There is a substantial body of law in other jurisdictions consistent with the foregoing which we find compelling and applicable in this case.[2] Where a subsequent lessee of a common lessor has notice of

---

[1] In The Youth Center v. Ward & Ward, Inc., 52 Luz. Reg. 7 (1961), it was held that where an original lessee has a restrictive covenant in his lease and subsequently thereto the landlord lets another property within the ambit of the restrictive covenant and the subsequent lease provides that that lessee shall not sell or offer for sale certain described merchandise which is consistent with the merchandise set forth in original lessee's restrictive covenant, an injunction will issue against the subsequent lessee to enforce those restrictions in *his* lease on the theory of third-party beneficiary.

[2] For a full and complete analysis of the law regarding enforcement of restrictive covenants similar to that at issue herein see 97 A. L. R. 2d 4 (1964, 1968 later case service).

a restrictive covenant in a prior lessee's lease, the subsequent lessee is bound by that restrictive covenant, and equity will grant an injunction to enjoin subsequent lessee from doing business in violation of the restrictive covenant: Farm Food Stores, Inc. v. Gianeschi, 320 Ill. App. 582, 51 N.E. 2d 792 (1943); Aiello Bros., Inc. v. Saybrook Holding Corporation, 106 N.J. Eq. 3, 149 Atl. 587 (N.J. 1930); Reeve v. Hawke, 136 A.2d 196 (Delaware, 1957); Gillen-Crow Pharmacies, Inc. v. Mandzak, 5 Ohio St. 2d 201, 215 N.E. 2d 377 (1966). These cases were all decided on the finding that there was actual notice of the restrictive covenant in the subsequent lessee. By the same token, injunctive relief is appropriate to enforce a restrictive covenant in a prior lessee's lease where there is constructive notice of that covenant to subsequent lessees by virtue of recordation of the prior lessee's lease: Slice v. Carozza Properties, Inc., 215 Md. 357, 137 A.2d 687 (1958), South Buffalo Stores v. W. T. Grant Co., 274 N.Y.S. 549 (1934); modified as to the amount of damages only, 289 N.Y.S. 918 (1936), affd., 273 N.Y. 660, 8 N.E. 2d 335 (1937); Reeve v. Hawke, supra. In fact, a restrictive covenant in a lease will even be enforced against a subsequent purchaser from the lessor where the purchaser had notice of the lease and the restrictive covenant therein, on the apparent theory of a covenant running with the land: Gonzales v. Reynolds, 34 N.M. 35, 275 P. 922 (1929).[3] However, a tenant is not bound by re-

---

[3] It is immaterial whether the covenant is considered to be running with the land or not, as equity will enforce it if there is actual or constructive notice of it on the theory that the landlord and original tenant intended that the original tenant be protected against competition as a condition of his lease: Deepdale Cleaners, Inc. v. Friedman, 184 N.Y.S. 2d 463 (1957); Gillen-Crow Pharmacies, Inc. v. Mandzak, 5 Ohio St. 2d 201, 215 N.E. 2d 377 (1966).

strictive covenants in the lease of a tenant prior in time unless he has knowledge of the restrictive covenant at the time he enters into his lease with the landlord: Colbee 52nd Street Corporation v. Madison 52nd Corporation, 169 N.Y.S. 2d 716 (1957), affd. 173 N.Y.S. 2d 243 (1958).

There is nothing in this record to support, in any way, a contention that either Santerian's or Milne had notice, constructive or actual, of the restrictive covenant in plaintiff's lease. Clearly, none of the leases were ever lodged of record in the office for the recording of deeds or apparently anywhere else, and so there can be no finding of constructive notice. There is likewise no evidence of any actual notice of any restrictive covenant prior to the execution of these leases. The testimony offered by both Santerian's and Milne was to the effect that they had no knowledge of the restrictive covenant or of any of the terms of plaintiff's lease prior to their entering into the lease agreement with Street Road and this testimony is totally uncontradicted on the record in this case. On June 26, 1968, plaintiff apparently notified Street Road by telegram of the fact that Santerian's was engaged in the business of selling men's wear allegedly contrary to provisions of plaintiff's lease. However, it should be noted that this telegram was sent approximately nine months after Santerian's had entered into their lease agreement with Street Road. Additionally, there is no evidence to indicate that this telegram was sent to Santerian's at any time. On September 19, 1968, plaintiff sent or caused to be sent a letter to Street Road regarding the lease to Santerian's, and what was denominated therein as a proposed lease to Milne, protesting against the asserted conduct of both businesses in controvention of plaintiff's restrictive covenant. Copies of this letter were sent to both Santerian's and

Milne. However, this letter was sent approximately one year after Santerian's lease was executed and approximately one month after the Milne lease was executed. There was an additional exchange of correspondence between counsel for plaintiff and counsel for Street Road on October 22, 1968, October 23, 1968, and November 1, 1968, regarding plaintiff's contentions regarding the alleged violations of the restrictive covenant, but once again, this exchange of correspondence occurred after the execution of the leases with both Santerian's and Milne. Where a subsequent lessee gains knowledge of a prior lessee's restrictive covenant only after execution of his lease and entry into possession, injunctive relief to enforce the covenant shall be denied: Senn v. Ladd, 38 N.Y.S. 2d 820 (1942). The same result is dictated even if the subsequent lessee had not taken possession or expended any sums in furtherance of the lease: Deepdale Cleaners, Inc. v. Friedman, 184 N.Y.S. 2d 463 (1957). Therefore, this body of correspondence can hardly be deemed to constitute notice to the subsequent lessees when, in fact, the correspondence occurred after the execution of the lease agreements by the subsequent lessees.

We likewise are unable to infer any notice to either of the subsequent lessees from the terms of their own leases. Where the lease of a subsequent lessee gives some indication of a restrictive covenant in a prior lessee's lease, subsequent lessee has some duty to make inquiry as to the terms of the prior lease: Arista Luncheonette, Inc. v. Harann Operating Corporation, 140 N.Y.S. 2d 823 (1955), reversed on the ground that defendant's business was of such a nature as not to violate the covenant: 147 N.Y.S. 2d 144 (1950), affirmed 1 N.Y. 2d 724, 134 N.E. 2d 682 (1956). Both leases were made a part of the record. It is interesting to note that in many respects

the Milne lease is similar if not identical to plaintiff's lease. In the section of the Milne lease delineating the use of the premises, it is set forth that the premises shall be used for the purpose of the sale of men's and boys' wear and accessories. There is no restrictive covenant in this lease to suggest to the lessees that there may be restrictive covenants in leases of the other tenants of the shopping center, and clearly no allusion to the restrictive covenant in either plaintiff's lease or in any other of the tenants' leases, if there are any. The Santerian's lease, although different in form, likewise contains a clause respecting the intended use of the premises,[4] but no suggestion of a restrictive covenant in favor of any other lessee. Thus, we are unable to find anything in this lease to give notice of the restrictive covenant in plaintiff's lease. Cf. Colbee 52nd Street Corporation v. Madison 52nd Corporation, supra. We likewise are unable to impute notice to either Santerian's or Milne from the mere fact that plaintiff was already conducting business when they entered into their leases and began conducting business in their stores. Therefore, there being no evidence to show any notice to Santerian's or Milne, constructive or actual, of the restrictive covenant in plaintiff's lease, plaintiff's request for injunctive relief against them must be denied.

With regard to the cause of action against Street Road, an injunction will not be granted against a landlord only to enforce a restrictive covenant where the subsequent lessee or lessees had no notice of the restrictive covenant in the original lessee's lease: Rappaport v. Raylen Realty Corp., 124 N.Y.S. 2d 331 (1953). This holding is on the basis that a

---

[4] Which is consistent with the actual use to which the premises was put.

court of equity will not require a landlord to do that which the court would not require the lessees to do. Where injunctive relief based upon a restrictive covenant in an original lessee's lease cannot be granted against a subsequent lessee, injunctive relief cannot be granted against the lessor either. The original lessee in this situation is, therefore, relegated to other forms of relief. Therefore, inasmuch as we cannot grant injunctive relief against Milne or Santerian's, we likewise cannot grant injunctive relief against Street Road. As indicated, this is not to say that plaintiff does not have its remedies against Street Road, if, in fact, Street Road has breached its lease agreement with plaintiff (see Reeve v. Hawke, supra), a question which we do not reach, however, but we hold only that the relief demanded in this case and under this set of facts cannot be granted. We will, however, afford plaintiff the opportunity to pursue its legal remedies against Street Road if it so desires.

## CONCLUSIONS OF LAW

1. This court has jurisdiction over the parties and the subject matter.

2. Plaintiff's lease with its landlord contains a restrictive covenant.

3. Neither Santerian's nor John S. Milne, Inc., had actual or constructive notice of the aforesaid restrictive covenant.

4. Equitable relief cannot be granted against Santerian's or John S. Milne, Inc.

5. Equitable relief cannot be granted against Street Road Shopping Center, Inc.

## DECREE NISI

And now, to wit, February 17, 1970, it is hereby ordered, directed and decreed that the within com-

plaint in equity against defendants, Santerian's and John S. Milne, Inc., shall be dismissed and judgment entered in their favor; the complaint against defendant Street Road Shopping Center, Inc., shall be certified to the law side of the court. Plaintiff to pay the costs.

This decree shall become a final order without order of court unless plaintiff shall file exceptions thereto within 20 days of the entry of this decree.

