**In re MULLEN;  Hobbs, Appellant and Cross–Appellee,**

v.

**Mullen, Appellee and Cross–Appellant;  Liming, Appellee.**

[Cite as *In re Mullen,* 185 Ohio App.3d 457, 2009-Ohio-6934.]

Court of Appeals of Ohio,
First District, Hamilton County.

Nos. C–090285 and C–090407.

Decided Dec. 31, 2009.

Lamda Legal Defense Education Fund and Christopher R. Clark; and Newman & Meeks Co., L.P.A., and Lisa T. Meeks, for appellant and cross-appellee.

Lutz, Cornetet, Meyer & Rush Co., L.P.A., and Karen P. Meyer, for appellee and cross-appellant.

Terry M. Tranter, for appellee.

SYLVIA S. HENDON, Presiding Judge.

{¶ 1} This case involves a custody dispute among three parties. Defendant-appellee and cross-appellant Kelly Mullen is Lucy Mullen's biological mother. Defendant-appellee Scott Liming is Lucy's biological father. Liming had donated his sperm for Lucy's conception and had signed an agreement with Mullen relinquishing his parental rights. He, nevertheless, had played a limited role in Lucy's life. Plaintiff-appellant and cross-appellee Michelle Hobbs was Mullen's

life partner before and after Lucy's birth. Hobbs, Mullen, and Lucy lived together. It is beyond dispute that Hobbs had an active role in Lucy's life.

## A Complicated Situation

{¶ 2} Hobbs's and Mullen's relationship ended when Lucy was approximately two years old. Mullen and Lucy moved out. Hobbs petitioned the juvenile court for shared custody of Lucy. Roughly one month later, Liming filed a complaint for sole custody of Lucy and also petitioned the court for shared custody.

{¶ 3} Hobbs's and Liming's cases were consolidated. A magistrate heard the cases, awarded Hobbs shared custody, but did not rule on Liming's complaint or petition. Liming and Mullen objected. The trial court sustained the objections, holding that Mullen had never contractually relinquished any of her parental rights regarding Lucy. The court dismissed Liming's complaint and petition on the basis that Liming had filed under the wrong Revised Code section, but the court did determine that Liming was Lucy's father. The court noted that Liming had the option of entering into a shared-parenting agreement with Mullen, or that he could, even without Mullen's consent, petition the court for an allocation of parental rights and responsibilities. At Hobbs's request, the court stayed the termination of its interim visitation order allowing Hobbs limited visitation with Lucy, pending these appeals.

{¶ 4} Hobbs has appealed. Mullen has cross-appealed on the issue of visitation. We address first Hobbs's assignment of error, in which she argues that the trial court erred when it determined that Mullen had not contractually relinquished some of her parental rights in favor of shared custody with Hobbs.

## Standard of Review

{¶ 5} Hobbs contends that we must accept the trial court's findings of fact as true, absent an abuse of discretion, but that we must determine de novo whether Mullen had contractually relinquished any of her parental rights. While appellate review of contractual disputes often proceeds in this manner, the Ohio Supreme Court delineated our standard of review in *Masitto v. Masitto*.[1] There, the court held that "[w]hether or not a parent relinquishes rights to custody is a question of fact which, once determined, will be upheld on appeal if there is some reliable, credible evidence to support the finding."[2]

---

1. (1986), 22 Ohio St.3d 63, 22 OBR 81, 488 N.E.2d 857.

2. Id. at 66, 22 OBR 81, 488 N.E.2d 857.

## Contractual Relinquishment

{¶ 6} It is well established in Ohio that a parent may contractually relinquish parental rights to a third-party nonparent.[3] And in *In re Bonfield*,[4] the Ohio Supreme Court recognized that a parent may voluntarily relinquish sole custody of a child in favor of shared custody with a nonparent. A court must look to the parent's conduct "taken as whole" to determine whether there has been a contractual relinquishment.[5]

{¶ 7} Hobbs argues that Mullen's conduct unequivocally demonstrated that Mullen had given Hobbs shared custody of Lucy. Hobbs points to the following findings by the trial court in support of her argument: (1) that she and Mullen had planned for and had paid for the pregnancy together, (2) that Hobbs was present at Lucy's birth, (3) that Hobbs's name appeared on the ceremonial birth certificate, (4) that she and Mullen jointly cared for Lucy, (5) that she and Mullen had held themselves out as and had acted as a family, (6) that Mullen, Lucy, and others had referred to Hobbs as "Momma," (7) that Mullen's will named Hobbs as Lucy's guardian, and (8) that Mullen had executed a general durable power of attorney and a health-care power of attorney giving Hobbs the ability to make school, health, and other decisions for Lucy.

{¶ 8} We agree that this is strong evidence that Mullen had intended to give Hobbs shared custody of Lucy, but we are not persuaded that the trial court erred. As the trial court noted, the documents that gave Hobbs parental decision-making powers were given at Mullen's discretion, and Mullen always retained the unilateral right to revoke them. The trial court also relied on testimony from Mullen and others that Mullen had never intended that Hobbs share in the child's legal custody. The trial court relied most heavily, however, on the fact that Mullen had repeatedly refused to enter into a legally enforceable shared-custody agreement with Hobbs when presented with the option to do so.[6]

{¶ 9} Since the trial court's decision is supported by competent, credible evidence, we will not disturb it on appeal.[7]

---

3. *In re Perales* (1977), 52 Ohio St.2d 89, 6 O.O.3d 293, 369 N.E.2d 1047; see also *Masitto*, 22 Ohio St.3d 63, 22 OBR 81, 488 N.E.2d 857; *Clark v. Bayer* (1877), 32 Ohio St. 299; *In re Bailey*, 1st Dist. Nos. C–040014 and C–040479, 2005-Ohio-3039, 2005 WL 1413269.

4. 97 Ohio St.3d 387, 2002-Ohio-6660, 780 N.E.2d 241.

5. *Masitto*, 22 Ohio St.3d 63, 22 OBR 81, 488 N.E.2d 857.

6. See *Bonfield*, 97 Ohio St.3d 387, 2002-Ohio-6660, 780 N.E.2d 241.

7. Cf. *In re Jones*, 2d Dist. No. 2000 CA 56, 2002-Ohio-2279, 2002 WL 940195.

## The Significance of *Bonfield*

{¶ 10} In *Bonfield,* the Ohio Supreme Court held that a parent is bound by his or her voluntary, written agreement to share custodial rights with a nonparent, provided that there has been a judicial determination that such an agreement is in the best interest of the child involved.[8]

{¶ 11} Hobbs contends that affirming the trial court would set an improper precedent requiring a nonparent, in cases when adoption is not an option, to have a *Bonfield*-type agreement to establish shared custody. We agree with Hobbs that the law does not require a written agreement to establish shared custody, but the trial court did not make a contrary determination.

{¶ 12} As we have already noted, in *Perales,* the Ohio Supreme Court held that a contractual relinquishment of parental rights can be demonstrated by a parent's conduct. It did not hold that a relinquishment must be written. We find no reason, nor did the trial court, why a partial relinquishment in favor of shared custody cannot be proved in the same way—i.e., through conduct. The significance of *Bonfield* to the trial court was that Mullen had known that a *Bonfield*-type agreement was an option, but had repeatedly refused to enter into one. The court used this as evidence of Mullen's intent not to share legal custody of Lucy with Hobbs.

## Liming's Role

{¶ 13} Finally, Hobbs argues that the trial court erred when it determined that Liming had not relinquished his parental rights to both Mullen and Hobbs. We find no error. There is competent, credible evidence in the record that the donor-recipient agreement in which Liming agreed to relinquish his parental rights was only between Liming—the donor—and Mullen—the recipient. There was no contract between Hobbs and Liming. This argument has no merit.

{¶ 14} Hobbs's assignment of error is overruled.

## Mullen's Cross–Appeal on the Issue of Visitation

{¶ 15} Mullen raises one assignment of error. She contends that the trial court did not have jurisdiction to stay, pending appeal, the termination of its interim visitation order. She is correct.

{¶ 16} Juv.R. 13 allows a juvenile court to set temporary visitation orders pending the outcome of a custody dispute. Once the underlying case is disposed of, however, the trial court's judgment supersedes the temporary order and the

---

8. See *Bonfield,* 97 Ohio St.3d 387, 2002-Ohio-6660, 780 N.E.2d 241.

temporary order ceases to exist.[9]  Since the visitation order at issue became a legal nullity once the trial court ruled on the merits of this case, there was no legal basis for a stay order.  Hobbs has no visitation rights.  We sustain Mullen's assignment of error.

### Conclusion

{¶ 17} We do not doubt that Hobbs bonded with Lucy. The record is replete with evidence that Hobbs loves this little girl.  But the trial court did not err. Hobbs has no legal right to share in Lucy's custody.  We, therefore, affirm the trial court's judgment to the extent that it denied shared custody.  And upon our determination that the trial court had no authority to stay the termination of its interim visitation order, we vacate the stay order.

Judgment affirmed in part
and vacated in part.

SUNDERMANN and CUNNINGHAM, JJ., concur.

---

9.  See *Smith v. Quigg,* 5th Dist. No. 2005–CA–001, 2006-Ohio-1494, 2006 WL 786855, ¶ 36.