Cupp, J.
{¶ 1} The issue raised in this case is whether a parent, by her conduct with a nonparent, entered into an agreement through which the parent permanently relinquished sole custody of the parent’s child in favor of shared custody with the nonparent. For the reasons that follow, we hold that competent, credible evidence supports the juvenile court’s conclusion that the parent did not enter into such an agreement. Accordingly, we affirm the judgment of the court of appeals.
Factual Background
{¶ 2} This matter is a dispute between a biological parent and a nonparent over the biological parent’s minor child. Michele Hobbs, appellant, met Kelly Mullen, appellee, in May 2000. The two began a relationship and eventually commenced living together. In 2003, Mullen expressed a desire to have a child. Hobbs asked a friend, appellee Scott Liming, who lived in Atlanta, Georgia, to donate his sperm to Mullen for an in vitro fertilization procedure. Liming agreed. Mullen and Liming signed a purported “Donor-Recipient Agreement on Insemination,” prepared by an attorney, in which Liming agreed to provide his semen to Mullen to use for purposes of her insemination. The agreement provided that Liming would be named as the father on the birth certificate of any child conceived but that he otherwise relinquished all parental rights and waived any action for future custody of, or visitation with, any children born to Mullen from the insemination procedure. Mullen agreed not to hold Liming legally or financially responsible for any child conceived. Hobbs was not a party to the agreement.
{¶ 3} In 2004, the women began the in vitro fertilization process, in which Mullen was the recipient of the implantation. The women shared the financial responsibility of the process. Mullen became pregnant and delivered a baby on July 27, 2005. Hobbs was present at the birth. The birth certificate identified Mullen as the child’s mother and Liming as the father. The birth certificate is on file in the Office of Vital Statistics at the Ohio Department of Health. The women created a ceremonial birth certificate that listed the two of them as the baby’s parents. Liming also formally acknowledged paternity.
{¶ 4} Before the baby’s birth, Mullen, through counsel, executed a will, in which she nominated Hobbs as the guardian of her minor child. Mullen also executed a health-care power of attorney for her child and a general durable power of attorney for her child. In each of the latter two documents, Mullen *419 gave Hobbs the authority to act as Mullen’s agent and to make decisions regarding the child. In each document, Mullen acknowledged that she was the legal parent of the child but that she considered Hobbs “to be [her] child’s co-parent in every way.”
{¶ 5} Shortly after the child’s birth, Liming moved back to Ohio and began visiting the child. For the two years after the child’s birth, the women coparented. In 2007, the women’s relationship deteriorated. In October 2007, Mullen and the child moved out of the house that they had shared with Hobbs.
Procedural Background
{¶ 6} In December 2007, Hobbs filed a verified complaint for shared custody in the Hamilton County Juvenile Court pursuant to R.C. 2151.23(A)(2) and a motion for visitation during the proceedings. Hobbs alleged that Mullen had created a contract through her conduct with Hobbs to permanently share legal custody of the child. Hobbs asked the court to grant her immediate visitation rights with the child and to enter an order pursuant to R.C. 2151.23(A)(2) granting her equal and shared custody of the child. In January 2008, Liming also petitioned for shared custody of the child.
{¶ 7} A magistrate determined that Hobbs had actively participated in the decision and process to have a child, that Mullen and Hobbs had had an understanding that they would act as equal coparents, and that Mullen had made an agreement taking away Liming’s parental rights and responsibilities while, in three other documents, naming Hobbs as an equal coparent. Thus, the magistrate concluded that Mullen’s conduct had created an agreement with Hobbs in which Mullen relinquished partial custody of her child to Hobbs and that it was in the child’s best interests to maintain ties with Hobbs.[1]
{¶ 8} Both Mullen and Liming filed objections to the magistrate’s report. The juvenile court rejected the magistrate’s decision. In its entry, the juvenile court focused on the legal relationship of each party to the child: Mullen was the biological and natural mother of the child and had acquired legal custody by operation of law; Liming was the legal, natural, biological father with the potential to obtain full custodial rights; Hobbs was a nonparent under Ohio law despite her active role in raising and caring for the child.
{¶ 9} Based on the testimony provided by Mullen, Liming, Hobbs, and others, as well as documentary evidence, the juvenile court concluded that a preponderance of the evidence did not conclusively demonstrate that Mullen’s conduct *420 created a contract that permanently gave partial custodial rights of the child to Hobbs. The juvenile court concluded that the magistrate had incorrectly required Mullen to share custody of her child, and the court dismissed Hobbs’s complaint for shared legal custody.[2]
{¶ 10} On Hobbs’s appeal, the court of appeals concluded that the decision by the juvenile court judge was supported by competent, credible evidence, and it affirmed the juvenile court’s decision. In re Mullen, 185 Ohio App.3d 457, 2009-Ohio-6934, 924 N.E.2d 448, ¶ 17. The cause is before this court upon the acceptance of a discretionary appeal. In re Mullen, 125 Ohio St.3d 1413, 2010-Ohio-1893, 925 N.E.2d 1001.
Analysis

Parental rights

{¶ 11} Parents have a constitutionally protected due process right to make decisions concerning the care, custody, and control of their children, and the parents’ right to custody of their children is paramount to any custodial interest in the children asserted by nonparents. Troxel v. Granville (2000), 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49; In re Murray (1990), 52 Ohio St.3d 155, 157, 556 N.E.2d 1169; Clark v. Bayer (1877), 32 Ohio St. 299, 310. A parent’s right to make decisions concerning the care, custody, and control of his or her children, however, is not without limits. For example, Ohio does not recognize a parent’s attempt to enter into a statutory “shared parenting” arrangement with a nonparent, same-sex partner because the nonparent does not fall within the definition of “parent” under the current statutes. In re Bonfield, 97 Ohio St.3d 387, 2002-Ohio-6660, 780 N.E.2d 241, ¶ 35; R.C. 3109.04. Rather, a parent may voluntarily share with a nonparent the care, custody, and control of his or her child through a valid shared-custody agreement. Bonfield, ¶ 50; R.C. 2151.23(A)(2). The essence of such an agreement is the purposeful relinquishment of some portion of the parent’s right to exclusive custody of the child. A shared-custody agreement recognizes the general principle that a parent can grant custody rights to a nonparent and will be bound by the agreement. Bonfield, ¶ 48, citing Masitto v. Masitto (1986), 22 Ohio St.3d 63, 65, 22 OBR 81, 488 N.E.2d 857; see Clark, paragraphs two and three of the syllabus (parents’ grant of custody to a nonparent through an agreement recognized as lawful and enforceable). A valid shared-custody agreement is reviewed by the juvenile court and is an enforceable contract subject only to the court’s determinations that the custodian is “a proper person to assume the care, training, and education of the child” and that the *421 shared-legal-custody arrangement is in the best interests of the child. Bonfield at ¶ 48, 50.[3]
{¶ 12} This appeal concerns whether a parent’s conduct with a nonparent created an agreement for permanent shared legal custody of the parent’s child. The determination of whether such a contract is present is essential. If there is no such contract, then the parent retains all parental rights. If there is such a contract, then the juvenile court must engage in a “suitability” and “best interests” analysis. Bonfield, 97 Ohio St.3d 387, 2002-Ohio-6660, 780 N.E.2d 241, at ¶ 48, 50.

Evidentiary standards and standards of review

{¶ 13} Central to answering the question of whether the parent agreed to relinquish permanent, partial legal custody of her child to a nonparent is the evidentiary standard by which the juvenile court must weigh the evidence and reach its decision. If that decision is appealed, then the standard of review that the appellate court must apply to the juvenile court’s decision becomes relevant.
{¶ 14} Whether a parent has voluntarily relinquished the right to custody is a factual question to be proven by a preponderance of the evidence. See In re Perales (1977), 52 Ohio St.2d 89, 6 O.O.3d 293, 369 N.E.2d 1047, syllabus; Reynolds v. Goll (1996), 75 Ohio St.3d 121, 123, 661 N.E.2d 1008. Likewise, whether a parent, through words and conduct, has agreed to share legal custody with a nonparent is also a question of fact. A trial court has broad discretion in proceedings involving the care and custody of children. Reynolds at 124.
{¶ 15} We have consistently held that the determination of whether a “parent relinquishes rights to custody is a question of fact which, once determined, will be upheld on appeal if there is some reliable, credible evidence to support the finding.” Masitto, 22 Ohio St.3d at 66, 22 OBR 81, 488 N.E.2d 857. See also Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, 550 N.E.2d 178, syllabus (“Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court”). If similar findings are made by the trial and *422 appellate courts, this court must accept those findings unless there is no evidence of probative value to support them. Gillen-Crow Pharmacies, Inc. v. Mandzak (1966), 5 Ohio St.2d 201, 205, 34 O.O.2d 417, 215 N.E.2d 377, citing MacNab v. Bd. of Park Commrs. of Metro. Park Dist. in Cleveland (1923), 108 Ohio St. 497, 500, 141 N.E. 332; Peer v. Indus. Comm. (1938), 134 Ohio St. 61, 67, 11 O.O. 454, 15 N.E .2d 772. Thus, this court will not disturb the trial court’s findings unless those findings are unsupported by the evidence. In re Estate of Duiguid (1970), 24 Ohio St.2d 137, 141, 53 O.O.2d 328, 265 N.E.2d 287, quoting Gates v. River Local School Dist. Bd. of Edn. (1967), 11 Ohio St.2d 83, 40 O.O.2d 91, 228 N.E.2d 298, paragraph two of the syllabus.

Review of trial court findings

{¶ 16} In this case, the juvenile court engaged in an extensive analysis to determine whether Mullen’s conduct created any agreement by which she had permanently ceded partial legal custody rights to Hobbs. The evidence the juvenile court cited to support Hobbs’s allegations that Mullen agreed to permanently share custody with Hobbs included that (1) Hobbs and Mullen had planned for the pregnancy together, (2) Hobbs was present at the child’s birth, (3) Hobbs’s name appeared on the ceremonial birth certificate, (4) Hobbs and Mullen jointly cared for the child, (5) Hobbs and Mullen held themselves out as and acted like a family, (6) Mullen’s will named Hobbs as the child’s guardian, and (7) Mullen executed a general durable power of attorney and a health-care power of attorney giving Hobbs the ability to make school, health, and other decisions for the child.
{¶ 17} Thereafter, the court detailed the counterevidence. The court noted that all the documents created by Mullen that gave Hobbs some custodial responsibilities not only were revocable but were, in fact, revoked by Mullen. Testimony supported Mullen’s statement that she did not intend to relinquish sole custody of the child in favor of shared custody with Hobbs. The juvenile court also stated that although the evidence was unclear whether a shared-custody agreement was actually drafted by the parties or presented to Mullen, the evidence did show that Mullen had consistently refused to enter into or sign any formal shared-custody agreement when presented with the opportunity to do so. In an apparent acknowledgment that the parties had presented conflicting evidence, the juvenile court commented that “under circumstances such as are present in this case a writing of the agreement between the petitioner and the mother would be instructive and preferred to determine whether a contractual relinquishment was made and how much custody was relinquished.”
{¶ 18} The juvenile court also analyzed the role of the child’s father when considering whether Mullen permanently gave over partial legal custody rights. Mullen and Liming each testified that they consider the donor agreement, *423 executed prior the child’s birth, no longer in effect, and they are not abiding by it. Like Hobbs, Liming has also had regular contact with the child, and he is a consistent presence in the child’s life. He is listed on the child’s official birth certificate and has formally acknowledged paternity. The juvenile court indicated that before Hobbs could be determined to have any shared-custody right, the father’s pending parental rights must also be considered.
{¶ 19} On this conflicting and disputed evidence, the juvenile court concluded that there was reliable, credible evidence that Mullen’s conduct did not create an agreement to permanently relinquish sole custody of her child in favor of shared custody with Hobbs. In accordance with its standard of review, the appellate court reviewed the evidence presented to the juvenile court and noted that there was strong evidence supporting both Mullen’s and Hobbs’s positions. However, of particular interest to the appellate court was the evidence that the juvenile court relied on to conclude that although Mullen and Hobbs had shared responsibilities for the child, Mullen had not agreed to permanently cede partial custody rights. The appellate court determined that “taken as a whole,” reliable, credible evidence supported the juvenile court’s findings that Mullen had not permanently given over partial legal custody of the child. Mullen, 185 Ohio App.3d 457, 2009-Ohio-6934, 924 N.E.2d 448, ¶ 16; Masitto, 22 Ohio St.3d at 66, 22 OBR 81, 488 N.E.2d 857. The appellate court declined to disturb that decision. Mullen at ¶ 17.
{¶ 20} We conclude that the appellate court applied the proper standard of review in this matter. We also conclude that the appellate court did not err when it affirmed the juvenile court’s decision to dismiss Hobbs’s complaint for shared custody of the child. Like that of the juvenile and appellate courts, our review of the record shows that not only was there evidence indicating that Mullen had intended to share custody of the child, there was contrary evidence indicating that Mullen did not agree to permanently cede partial legal custody rights to Hobbs.
{¶ 21} In this regard, as the juvenile and appellate courts noted, we also observe that the best way to safeguard both a parent’s and a nonparent’s rights with respect to children is to agree in writing as to how custody is to be shared, the manner in which it is shared, and the degree to which it may be revocable or permanent, or to apply to a juvenile court for an order under R.C. 2151.23(A)(2) establishing the scope of the legal custody that the parent desires to share, or both. Bonfield, 97 Ohio St.3d 387, 2002-Ohio-6660, 780 N.E.2d 241, ¶ 9. Our prior decisions have not required a parent to create a written contract to relinquish custody rights, although in some cases, writings may have been involved. Masitto, 22 Ohio St.3d at 64, 22 OBR 81, 488 N.E.2d 857; Perales, 52 Ohio St.2d at 90, 6 O.O.3d 293, 369 N.E.2d 1047.
*424 {¶ 22} Finally, we do not agree with appellant’s argument that “coparent” equals “shared legal custody” and that because the parties’ statements and various documents used the term “coparent,” the parties therefore clearly agreed to “shared legal custody.” “Coparenting” is not synonymous with an agreement by the biological parent to permanently relinquish sole custody in favor of shared legal parenting. “Coparenting” can have many different meanings and can refer to many different arrangements and degrees of permanency. The parties’ use of the term, together with other evidence, however, may indicate that the parties shared the same understanding of its meaning and may be considered by the trial court in weighing all the evidence.
Conclusion
{¶ 23} Because the holdings of the juvenile and appellate courts are supported by the evidence and are not clearly against the manifest weight of the evidence, we must affirm them. Gillen-Crow Pharmacies, 5 Ohio St.2d at 205, 34 O.O.2d 417, 215 N.E.2d 377; Peer, 134 Ohio St. at 67, 11 O.O. 454, 15 N.E.2d 772. Accordingly, like the appellate court, we decline to disturb the juvenile court’s decision. Duiguid, 24 Ohio St.2d at 141, 53 O.O.2d 328, 265 N.E.2d 287. We hold that competent, credible, and reliable evidence supports the juvenile court’s conclusion that Mullen did not create an agreement to permanently relinquish sole legal custody of her child in favor of shared legal custody with Hobbs. Consequently, the juvenile court may not reach the questions of whether Hobbs is a suitable person to be a custodian of the child or whether shared legal custody is in the child’s best interests. See Bonfield, 97 Ohio St.3d 387, 2002-Ohio-6660, 780 N.E.2d 241, ¶ 48, 50.
{¶ 24} For the foregoing reasons, the appellate court did not err when it affirmed the juvenile court’s decision to dismiss the complaint for shared custody. The judgment of the court of appeals is affirmed.
Judgment affirmed.
Lundberg Stratton, O’Donnell, and Lanzinger, JJ., concur.
O’Connor, C.J., and Pfeifer and McGee Brown, JJ., dissent.

. The magistrate did not make a recommendation on the custody petition filed by Liming, but noted that the biological parents “apparently intend to enter into an agreement with one another on visitation or shared parenting.”

. The court also dismissed Liming’s complaint for custody so that appellees might pursue shared parenting under R.C. 3109.04. That issue is not before this court.

. This court has also examined agreements in which a parent is claimed to have contractually relinquished sole custody of his or her child to a nonparent. See Masitto v. Masitto (1986), 22 Ohio St.3d 63, 66, 22 OBR 81, 488 N.E.2d 857 (a father who allowed his in-laws to become guardians of his daughter, later consenting in writing, was deemed to have forfeited his rights to custody); In re Perales (1977), 52 Ohio St.2d 89, 96, 6 O.O.3d 293, 369 N.E.2d 1047 (a mother who agreed to give custody to a nonparent was alleged to have forfeited her custody right to nonparent). Although the circumstances presented in this appeal are different because the question involves shared legal custody, the underlying principles pertaining to contractual relinquishment of custody rights are applicable.