[Cite as *Bellville v. Bellville*, 2015-Ohio-3831.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| PHILLIP M. ROGERS BELLVILLE, | ) | CASE NO. 14 CO 45 |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| AMANDA SUE BELLVILLE, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from the Court of Common
Pleas of Columbiana County, Ohio
Case No. 13DR162

JUDGMENT:     Affirmed.

APPEARANCES:

For Plaintiff-Appellee:     Atty. Lynsey Lyle-Opalenik
991 Main Street
Wellsville, Ohio 43968

For Defendant-Appellant:     Atty. Dominic A. Frank
Betras, Kopp & Harshman, LLC
1717 Lisbon Street
East Liverpool, Ohio 43920

JUDGES:

Hon. Carol Ann Robb
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

Dated:  September 18, 2015

ROBB, J.

**{¶1}** Appellant Amanda Bellville ("the mother") appeals the decision of the Columbiana County Common Pleas Court naming Appellee Phillip Bellville ("the father") as residential parent. The mother argues the trial court's decision was against the manifest weight of the evidence and constituted an abuse of discretion. For the following reasons, the trial court's judgment is upheld.

STATEMENT OF THE CASE

**{¶2}** The parties were married in Newell, West Virginia in 2004. They have three children, who were born in May 2007, April 2009, and January 2012. The mother filed a complaint for divorce on March 29, 2013. The father filed a similar complaint on April 1, 2013. Both parties sought to be named the residential parent. The magistrate named the mother as the temporary residential parent pending trial.

**{¶3}** Psychological evaluations were ordered. The psychologist reported that the father was concerned for the children's best interests while the mother was more concerned with personal happiness. A guardian ad litem was appointed. After acknowledging the difficultly of making a recommendation in this case, she recommended the father receive custody.

**{¶4}** The magistrate held trial on February 6, March 19, and April 9, 2014. The testimony showed that the parties separated in the fall of 2013 and the father moved out in December 2013. He rented an apartment in East Liverpool, Ohio but lived in a house he rented from his brother in Newell, West Virginia, which is located across the river from East Liverpool. The mother and children remained in the marital residence in Negley, Ohio.

**{¶5}** In March 2013, the father went to the marital residence to receive the children from a babysitter. He opened the nightstand in the bedroom and read the mother's journal where he learned she was dating the neighbor, his good friend. He revealed his discovery to her parents and also to a friend. When the mother informed the father that she was going to bring the children to her boyfriend's parents' house for Easter, he did not return the children to her that day. These occurrences prompted the parties to file the divorce complaints rather than proceed with a planned dissolution.

{¶6} The mother stated the father was exercising companionship three weekends a month and some weekdays until she was granted temporary custody, at which pointed she strictly followed the local standard order of visitation.[1] The father testified the mother was inflexible in permitting changes to the schedule during the year pending trial. He also said she made unilateral decisions on various child-related matters. The parties communicated only by text or email. They agreed that they did not communicate well with each other.

{¶7} The mother worked at home full-time as a teacher for an online school, making just under $40,000 per year. She wished to remain in the marital home, which had a mortgage balance of approximately $128,000. She could only afford to maintain the marital home if she was named the residential parent and received child support. The oldest child was homeschooled with the assistance of an online school. The middle child attended preschool three days a week at a physical location. The mother employed a babysitter in the home ten hours a week so that she could work and run errands; she spent $300-400 per month in childcare.

{¶8} The father changed positions with his employer enabling him to work from home three out of five workdays a week. His income was anticipated to be $92,500 per year. He testified that if he received custody, the children would attend the public school he attended as a child. His parents lived across the street from the house he rented from his brother. His sister and nieces are also his neighbors. His sister testified the mother is not affectionate with the children, a claim disputed by the mother.

{¶9} On April 28, 2014, the magistrate issued a decision designating the father residential parent of the parties' three children. The mother was granted standard visitation with the midweek companionship modified so that she received the children every Tuesday after school until Thursday before school, which is eight additional overnights every four weeks for a total of twelve overnights every four weeks. The magistrate made findings of fact and conclusions of law, noting that determining the best interests of children is often a difficult duty.

---

[1] The local standard visitation order is overnight every other weekend with two weekday evenings in the week prior to an "off" weekend and one weekday evening in the week prior to an "on" weekend.

{¶10} In reviewing the best interest factors, the magistrate found: the children have a great relationship with both parents; the children are bonded with their extended families, but they only see the maternal family through the efforts of the father; the children are acclimated to staying in both homes; the mother honored court-ordered parenting time reluctantly and with little flexibility; the mother used her status as temporary residential parent to control the children's education to the exclusion of the father; the father will be more flexible in honoring visitation, even beyond what is ordered; the father moved just over the state border, which is a relatively short distance from the marital residence; and the mother seems motivated by a desire to experience life without the standards imposed by the father or her parents.

{¶11} The magistrate added that the fact the mother "had an affair" (which the magistrate found did not begin until February 2014, after the father had moved out) was not particularly relevant to the issue of custody. Yet, the magistrate found it "troubling" that the mother saw no connection between the affair and her parental relationship with the father and the children. The magistrate also doubted the mother's statement that the children were unaware of her relationship with the neighbor.

{¶12} The mother filed timely objections to the magistrate's decision. On the matter of custody, the mother argued that the magistrate abused its discretion and that the decision to award custody to the father was contrary to the manifest weight of the evidence.

{¶13} On October 15, 2014, the trial court overruled the mother's objections and affirmed the decision of the magistrate. The court pointed out that each parent stands on equal footing and that neither is entitled to a strong presumption in his or her favor. The court read the transcripts and the reports in reviewing the magistrate's decision. It was noted that the magistrate and the guardian ad litem applied the best interests factors contained in R.C. 3109.04(F)(1)(a)-(j).

{¶14} The court found that some statutory factors were inapplicable and others required only a cursory consideration, outlining the following factors from R.C. 3109.04(F)(1): (a) both parties requested to be designated residential parent; (b)

there was no request to interview the children who were 6, 4, and 2; (g) the father was ahead on child support; (h) neither party had been convicted of a relevant offense; and (j) the father established a residence outside of the state, which is thirty minutes from the marital residence.

{¶15} The court found that other factors required more discussion. In speaking of the children's interaction and interrelationship with the parents, the court recognized that the mother had been the primary caregiver. *See* R.C. 3109.04(F)(1)(c). The court pointed out that the father previously traveled extensively for work but now works primarily from home. The court concluded that the children were well-bonded with both parents, noting that the guardian ad litem found that both parents were dedicated and loving.

{¶16} The court also found the father was the only party facilitating the children's relationship with their maternal grandparents and extended family, which the mother found inappropriate. *See* R.C. 3109.04(F)(1)(c) (interaction with other significant people). The court recognized that the mother's relationship with her parents was already strained but got worse after the father discussed his discovery of the journal with her parents. The father was also the only one facilitating the children's relationship with their paternal family.

{¶17} As to the children's adjustment to home, school, and community, it was stated that the decision to home-school the oldest child was a joint decision prior to the separation, but the father does not believe it is in the best interest of the children. *See* R.C. 3109.04(F)(1)(d). The court recited that the mother testified the child is excelling in school. The court noted the youngest child is not yet of school age, the middle child is in preschool in Chippewa, Pennsylvania, and the mother enrolled the children in a home-schooling co-operative program (one day a week). She explained that, while they were separating, the father expressed that he wanted the children to have more socialization. The court stated that the mother preferred home-schooling but that a Christian school would be her first choice, if needed. The court also recited the father's preference for public school, noting that the school district for his residence has counselors to assist in the transition.

**{¶18}** In discussing the factor related to the parties' mental and physical health, the court referred to the psychological evaluations. *See* R.C. 3109.04(F)(1)(e). Therein, it was concluded that the father's concern for his children seemed sincere and justified; the mother's concern seemed to lie primarily with affirming her liberty and personal happiness. The court noted that the mother testified she felt "violated" when the father read her journal detailing her relationship with their neighbor but did not believe that the relationship should have caused the father to suffer a "destruction of trust."

**{¶19}** Regarding the parent more likely to honor parenting time, the trial court found the record supported the magistrate's conclusions that the father is more likely to be flexible with honoring companionship, even beyond what is court ordered. *See* R.C. 3109.04(F)(1)(f). The court also found that the mother honored companionship but reluctantly and rigidly with minimal flexibility, which was construed as an attempt to limit any additional contact between the children and their father.

**{¶20}** The court pointed out that the parties' voluntary visitation schedule was flexible when they were originally anticipating a dissolution. The court recognized that the father did not provide the mother with companionship on Easter; it was stated that based upon what he learned from counseling, the father did not think it was in the children's best interest to spend the holiday with the family of the mother's new boyfriend.

**{¶21}** As to other relevant matters under R.C. 3109.04(F)(1)(j), the court noted that the parties have different parenting styles and do not communicate well. The court believed that the mother had subtly tried to replace the father with her boyfriend. It was noted that she asked the father to travel more for work when he first moved out. The court pointed out that the mother believes that the children do not know she is in a relationship with her boyfriend; yet, she included the boyfriend in many childhood activities while stating she desired consistency for the children.

ASSIGNMENTS OF ERROR

**{¶22}** The mother timely appealed the trial court's October 15, 2014 judgment entry. She sets forth the following two "closely related" assignments of error, which she addressed together in her February 9, 2015 brief:

"THE TRIAL COURT'S DECISION TO DESIGNATE APPELLEE-PLAINTIFF THE PRIMARY RESIDENTIAL PARENT OF THE PARTIES' MINOR CHILDREN WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

"THE TRIAL COURT ABUSED ITS DISCRETION TO THE PREJUDICE OF THE APPELLANT-DEFENDANT IN NAMING THE APPELLEE-PLAINTIFF THE PRIMARY RESIDENTIAL PARENT OF THE PARTIES' MINOR CHILDREN."

{¶23} The mother argues that the court's construction of the evidence regarding the factors was against the manifest weight of the evidence and an abuse of discretion. The mother focuses on the court's analysis of the following factors: the children's adjustment to home, school, and community; the mental and physical health of the parties; the parent more likely to honor and facilitate companionship rights; and any other relevant factors.

{¶24} As to the factor in R.C. 3109.04(F)(1)(d) dealing with the children's adjustment to home, school, and community, the mother emphasizes that she has been the primary caregiver and she lives in the marital residence where she works at home. She states that the parties made a joint decision to enroll their oldest child (who was 6 years old at the time) in an online school and that he socializes at the co-operative, on field trips, and at weekly church group. She states that she agreed to enroll the children in private or public school if the court believed such was in their best interests. She cites the portions of the transcript showing that she provided the father with information related to the children's events. She points out that the father rented an unfurnished apartment in Ohio even though he was residing in West Virginia.

{¶25} The father responds that he does not believe home-schooling to be in the children's best interests. He states that the mother enrolled the children in the home-schooling co-operative without discussing it with him. He notes that he went to the school in the district where he resides and knows counselors and other personnel at the school who would assist with the oldest child's transition into a traditional school setting. The father also cites the magistrate's finding that the children seem acclimated to staying in both homes.

{¶26} Regarding the factor related to the mental and physical health of the parties, the mother believes that the magistrate's decision shows a "deep rooted prejudice against Appellant for having an extramarital affair and the effect the affair had on Appellee." She urges that these facts were irrelevant to her ability to parent her children. She complains that the court did not understand why she felt violated by having her journal read and then talked about to her family. She notes that these actions caused her already strained relationship with her parents to become worse.

{¶27} The father observes that the magistrate specifically stated that the affair was not particularly relevant to the issue of custody. He points out that the magistrate was merely explaining how it was troubling that the mother did not realize the effect the revelation had on the parenting relationship with the father. The father adds that her complaints regarding the trial court involve the court's recitation of the testimony. The father cites the psychological evaluations, including the opinion that the father seems genuinely concerned with the children's best interest while the mother seems to view the critical issue as the ability to affirm her liberty and personal happiness. He reiterates how he facilitates the children's relationship with both sides of the family while she does not. He additionally cites the report of the guardian ad litem, which favored naming him residential parent.

{¶28} On the factor concerning the parent more likely to honor and facilitate visitation, the mother contends that the record contradicts the determination that the father is more likely to be flexible and insists that the record demonstrates the opposite is true. She notes that the father decided to seek custody only after reading the journal; before which, they had cooperated in flexible companionship time. She characterized the father as engaging in retribution by withholding the children on Easter.

{¶29} She then reviews three "glitches" in the father's exercise of his companionship in the year pending trial during which she had temporary custody: summer, Christmas break, and sick time. The father wished to bring the children to the beach during a time that was not his. Rather than agree with his suggested modification, she proposed either her own modification or the standard schedule, which the father believed was inflexible. As to Christmas break, the mother

submitted a schedule for the father's review.  When he failed to timely respond, she refused any alterations.  There was also confusion as to when the break began.  Concerning make-up time, she states that she asked him to keep the children while she was sick and later asked if she could have them during his visitation to make up for her sick day.

{¶30}  The father adds that she agreed to let him take the children to a science center in Pittsburgh, but then changed her mind when he was on the way to her house.  He notes that he bought circus tickets but was only permitted to take the children if he traded the entire weekend (thus giving up his son's birthday).  He concludes that the trial court was permitted to construe the testimony as showing a tendency toward rigidity and lack of flexibility in facilitating companionship on the part of the mother.

{¶31}  As to other factors, the mother disagrees with the opinion that she is trying to replace the father with her boyfriend merely because he attends their activities during her parenting time.  She states that their relationship is portrayed to the children as a friendship, noting that the children have known this neighbor and family friend their entire lives.  She points out that he does not spend the night when the children are home.  She emphasizes that her relationship did not begin until after the father moved out and asserts that the father was frequenting bars in an effort to meet women at the time.

{¶32}  The father replies that the mother brought her boyfriend to an amusement park, gymnastics practice, T-ball games, home-schooling field trips, and on car rides to his house.  He states that it was reasonable for the court to question whether the children did not "suspect" a relationship.  Under other relevant factors, the father adds that the mother's complaints about how he fed the children contradicted food choices made by her.  He also points to the poor parenting choice she made by letting a six-year-old and a four-year-old sleep alone in a tent outside of her bedroom window all night in a yard with no fence (in a neighborhood where animals have killed their chickens, ducks, and guinea fowl; especially since they have seen stray dogs ripping apart their birds on a security video and have called the dog

catcher in the past). The father concludes that the court did not abuse its discretion in weighing the evidence and determining the credibility of the witnesses.

LAW AND ANALYSIS

**{¶33}** A trial court has broad discretion in making decisions regarding the custody of children. *In re Mullen*, 129 Ohio St.3d 417, 2011-Ohio-3361, 953 N.E.2d 302, ¶ 14. In order to find that a court abused its discretion in making a custody determination, the appellate court must conclude that the decision below was unreasonable, arbitrary or unconscionable. *Bechtol v. Bechtol*, 49 Ohio St.3d 21, 23, 550 N.E.2d 178 (1990), citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). "[C]ustody issues are some of the most difficult and agonizing decisions a trial judge must make." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997).

**{¶34}** "Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court." *Id.*, quoting *Bechtol*, 49 Ohio St.3d 21 at syllabus. The trier of fact has the best opportunity to view the demeanor, attitude, and credibility of each witness, which items do not translate well on the written page, especially in a custody case. *Davis*, 77 Ohio St.3d at 418-419, citing *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80-81, 461 N.E.2d 1273 (1984).

**{¶35}** The appellate court does not reverse a custody decision due to a mere difference of opinion on credibility of the competing witnesses. *Davis*, 77 Ohio St.3d at 419. If there are two reasonable viewpoints, we do not choose the one we think is best. Rather, we defer to the trier of fact. The choice of one reasonable viewpoint over the other does not make a decision unreasonable, arbitrary, or unconscionable; nor does it make a decision contrary to the manifest weight of the evidence.

**{¶36}** In making an original custody determination in a divorce action, the test to be applied by the trier-of-fact is the best interests of the children. *See* R.C. 3109.04(A)(1). In applying this test, the court shall consider the statutory best interests factors. *See* R.C. 3109.04(F)(1). These factors include, but are not limited to, the following: (a) the parents' wishes; (b) the child's wishes if the court has

interviewed the child; (c) the child's interaction and interrelationship with parents, siblings, and any other person who may significantly affect the child's best interests; (d) the child's adjustment to home, school, and community; (e) the mental and physical health of all relevant persons; (f) the parent more likely to honor and facilitate court-approved parenting time or companionship rights; (g) whether either parent has failed to make child support payments pursuant to a support order; (h) whether either parent or any member of their households has been previously convicted of certain specified criminal offenses; (i) whether the residential parent or a parent subject to a shared parenting decree has continuously and willfully denied the other's right to parenting time in accordance with a court order; and (j) whether either parent has or is planning to establish a residence outside of Ohio. R.C. 3109.04(F)(1)(a)-(j).

**{¶37}** No one factor is dispositive. *See In re J.K.*, 7th Dist. No. 14CA899, 2014-Ohio-5502, ¶ 23. The magistrate reviewed the factors, and the trial court conducted its own review of these factors. Both found the factors weighed in favor of the father. The psychological evaluation and the guardian ad litem's report also weighed in the favor of the father, and the court considered and adopted certain positions set forth in the psychological evaluation and the report of the guardian ad litem. In reviewing the court's conclusions, the following facts are pertinent to our review.

**{¶38}** The father moved to Newell, West Virginia, but the marital residence is fairly close to Ohio's border with both West Virginia and Pennsylvania. Newell is just across the river from East Liverpool, Ohio. The parties went to church in East Liverpool prior to the separation. The father's family lives in Newell; his parents live across the street, and his sister and niece live a few houses down. This is the town where the parties were married. It is located less than thirty minutes from the marital residence. The mother brings the middle child to preschool in Chippewa, Pennsylvania three days a week. The mother brings the children to church in Chippewa, and the oldest child attends a church group there on Wednesday nights. It was not unreasonable for the court to conclude that the factor of moving to Newell did not weigh against the father. *See* R.C. 3109.04(F)(1)(j).

**{¶39}** Regarding the home, school, and community factor in R.C. 3109.04(F)(1)(d), the magistrate found that the children were acclimated to staying in both homes. The court set forth various facts related to this factor, such as how the father no longer believes home-schooling is in the oldest child's best interests and would send the children to the public school he attended where staff would help transition the children, only one of whom was school age at the time. The mother believes the facts related to this factor weigh in her favor, such as her opinion that the oldest child is excelling in his online/home-schooling. The court recited the facts presented at trial that related to this factor. The trial court can balance this factor in favor of the father without acting unreasonably.

**{¶40}** As to the contested factor in R.C. 3109.04(F)(1)(f), a rational trier of fact could conclude that the father would be a more flexible residential parent than the mother and would facilitate visitation with less rigidity than the mother did while she had temporary custody. The magistrate saw the parties testify and personally witnessed their gestures, eye movements, voice inflections, attitudes, and demeanor. The examples of compromise provided by the mother were not compelling to the magistrate or the trial court. For instance, the father noted that one time when his plane was delayed, the mother was not happy when his sister picked up the children for him. The mother used her act of allowing the children's aunt to pick them up as an example of her flexibility. The conclusions drawn by the trial court as to the parties' sincerity concerning their tendency to compromise was not unreasonable.

**{¶41}** Contrary to the mother's argument, the magistrate did not find that her affair negatively affected her parenting *ability*. Rather, a comment was made that she did not comprehend the connection between that relationship and her parental relationship with the father and thus the children, e.g. she did not understand why this would have destroyed his trust in her. The trial court found it difficult to believe that the children (especially the oldest) were not aware of her relationship with the boyfriend as she claimed, since they saw him nearly every day and she brought him to most activities. Although another judge may disagree with various observations made on this topic, those observations do not result in a reversible decision.

**{¶42}** Finally, as to other relevant factors, the father demonstrated his acceptance of counseling for himself and the children in order to facilitate a relationship and cooperative skills; the mother rejected counseling. The court found the father was the only party facilitating the children's relationship with both the maternal and paternal families. The mother had a full-time career working from home (with a babysitter assisting ten hours per week). The father now works at home three days a week and has family available for childcare assistance. The court recognized that the mother had been the primary caregiver. This is an important fact, but again, no one factor is dispositive, and the fact-finder has broad discretion in making its final decision. *See In re J.K.*, 7th Dist. No. 14CA899 at ¶ 23.

**{¶43}** The court found the best interests scale balanced in favor of designating the father the residential parent but granting the mother extended companionship time. As aforementioned, the court provided companionship to the mother in the amount of two overnights every other weekend plus two consecutive overnights during each week (beginning after school on Tuesdays). In exercising its broad discretion to weigh the evidence and consider the sincerity and credibility of the witnesses, a fact-finder could rationally determine that it was in the children's best interests to enter such an order.

**{¶44}** In summary, a decision designating the father as the residential parent with extended parenting time to the mother was not unreasonable, arbitrary, or unconscionable nor contrary to the manifest weight of the evidence. Accordingly, the judgment of the trial court is affirmed.

Waite, J., concurs.

DeGenaro, J., concurs.