[Cite as *In re G.R.-Z.*, 2017-Ohio-8393.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

IN RE: G.R.-Z. AND C.R.-Z.

C.A. No.    28316

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    LC 15-10-0218
                      LC 15-10-0219

DECISION AND JOURNAL ENTRY

Dated: November 1, 2017

CARR, Judge.

{¶1}    Appellant S.Z. and cross-appellant R.K. have appealed the judgment of the Summit County Court of Common Pleas, Juvenile Division.  This Court reverses and remands.

I.

{¶2}    S.Z. ("Domestic Partner") and R.K., fka R.R. and R.R.-Z., ("Mother") were in a romantic relationship for a number of years.  Same-sex marriage was not legally recognized during the course of their relationship, and the two never married.  They did, however, participate in a civil commitment ceremony.  Mother conceived twins (G.R.-Z. and C.R.-Z., d.o.b. 1/5/2012) while the women were still romantically involved.  J.A. donated his sperm for the conception and signed an agreement relinquishing his parental rights to the children and

releasing him from any obligation to pay child support.[1]  Genetic testing established J.A. as the biological father of the twins.  Mother intended for J.A. to remain a part of the children's lives and that the parties would refer to J.A. as an uncle until Mother decided to tell them about their conceptions.

{¶3}  Mother's and Domestic Partner's relationship soured, and the women separated in March 2014.  Domestic Partner moved out of Mother's home, where the children resided, in July 2014.  In June 2015, the parties executed an agreement whereby Domestic Partner was to have some visitation with the children, as well as an obligation to bear some financial responsibility for their "basic living expense[s]."

{¶4}  In October 2015, Domestic Partner initiated an action in the juvenile court by filing a "motion for legal custody" of the children, and appending the parties' agreement and a parenting proceeding affidavit.  Pending hearing on the motion, Domestic Partner had weekly two-hour supervised visitations with the children.  In April 2016, Domestic Partner moved the court for an order allowing her sister to attend visitations with her.  A few weeks later, the juvenile court expanded Domestic Partner's visitation to weekly four-hour unsupervised visitations on alternating Saturdays and Sundays.

{¶5}  Mother moved to dismiss Domestic Partner's motion for legal custody pursuant to Civ.R. 12(C) on the pleadings.  Domestic Partner responded in opposition, while J.A. joined in Mother's motion to dismiss.  The juvenile court denied the motion to dismiss.

{¶6}  The matter proceeded to hearing on Domestic Partner's motion for legal custody.  The juvenile court issued its judgment in which it found that (1) Mother contractually

---

[1] That contract is not part of the record.  Moreover, Mother and J.A. claim that they no longer consider that agreement to be valid.  This Court takes no position on the validity of that agreement.

permanently relinquished some portion of her right to exclusive custody of the children, (2) Domestic Partner failed to demonstrate that it was in the best interest of the children that Mother and Domestic Partner share custody, and (3) the juvenile court lacked the jurisdiction to award Domestic Partner visitation with the children. Domestic Partner and Mother timely filed their respective notices of appeal and cross-appeal. Mother and Domestic Partner each raise one assignment of error for review.

II.

## MOTHER'S ASSIGNMENT OF ERROR

THE TRIAL COURT ABUSED [ITS] DISCRETION IN RULING THAT [MOTHER] RELINQUISHED PARTIAL CUSTODY RIGHTS TO [DOMESTIC PARTNER].

{¶7} Mother argues that the juvenile court erred by finding that she intended to permanently relinquish a portion of her custodial rights to the children. This Court agrees.

{¶8} The Supreme Court of Ohio has recognized the right of a parent to enter into a contract to share custody with a non-parent. *In re Bonfield*, 97 Ohio St.3d 387, 2002-Ohio-6660, ¶ 48-50. The *Bonfield* court did so in recognition of the "goal of providing a stable environment for the children's growth." *Id.* at ¶ 36. More recently, the Supreme Court of Ohio has recognized that a parent, through mere conduct, may create a contract with a non-parent to share legal custody of children. *In re Mullen*, 129 Ohio St.3d 417, 2011-Ohio-3361, ¶ 14. What has remained constant, however, is Ohio's refusal to recognize a shared parenting agreement between a parent and non-parent. *Id.* at ¶ 11, citing *Bonfield* at ¶ 35, and R.C. 3109.04.

{¶9} In this case, Mother and Domestic Partner entered into a written agreement in the interest of "rais[ing] the children in a stable and loving environment." The contract purported to grant Domestic Partner some visitation with the children, as well as a financial obligation to pay

one-third of the cost of shelter, food, and childcare for the children every month, plus one-half of any out-of-pocket expenses exceeding $150 for medical and dental emergencies or conditions. Significantly, throughout the contract, Mother was consistently referred to as "custodial parent," while Domestic Partner was referred to as "non-custodial parent." Nowhere is there an expressed intent to share custody; in fact, the agreement reflects that only Mother would have custody. By consistently characterizing Domestic Partner's interest as "non-custodial," the plain language of the agreement shows that Mother never intended to relinquish any portion of her custody of the children. The only contractual mechanism recognized under Ohio law which allows a parent and non-parent to share in the rights and responsibilities relevant to the care and upbringing of children is a shared custody agreement. *See In re Bonfield*, 2002-Ohio-6660, at ¶ 48-50; *In re Mullen*, 2011-Ohio-3361 (recognizing shared custody agreements whether expressed in writing or implied by conduct). Here, the parties chose to express their intent in writing. However, there is nothing in their written agreement that evidences any intent by Mother to share custody with Domestic Partner. In fact, the clear intent is that Mother would retain undivided custody of the children.

{¶10} Moreover, the parol evidence rule prohibits consideration of any oral agreements or conduct by the parties to confer shared custody. The Supreme Court of Ohio has written:

> [T]he parol evidence rule is a rule of substantive law that prohibits a party who has entered into a written contract from contradicting the terms of the contract with evidence of alleged or actual agreements. When two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing.

(Internal quotations omitted.) *Williams v. Spitzer Autoworld Canton, L.L.C.*, 122 Ohio St.3d 546, 2009-Ohio-3554, ¶ 14, quoting *Ed Schory & Sons, Inc. v. Soc. Natl. Bank*, 75

Ohio St.3d 443, 440 (1996), quoting 3 Corbin, Corbin on Contracts 357, Section 573 (1960). In addition, the Supreme Court of Ohio has emphasized that

> [T]he best way to safeguard both a parent's and a nonparent's rights with respect to children is to agree in writing as to how custody is to be shared, the manner in which it is shared, and the degree to which it may be revocable or permanent, or to apply to a juvenile court for an order under R.C. 2151.23(A)(2) establishing the scope of the legal custody that the parent desires to share, or both.

*In re Mullen* at ¶ 21, citing *Bonfield* at ¶ 9.

**{¶11}** Here, the parties memorialized their intent in a written agreement. The preamble stated: "The clauses below form an agreement between the custodial and noncustodial parents where the health, safety and development of [the children] is the sole and foremost concern." As the June 2015 written contract embodied the parties' agreement, this Court is precluded from considering whether their conduct might have given rise to an agreement to share custody of the children.

**{¶12}** The plain language of the parties' agreement indicates no intent to enter into a shared custody agreement. As there was no valid shared custody agreement between the parties, the juvenile court erred by finding that Mother permanently relinquished some of her custodial rights regarding the children. Mother's assignment of error is sustained.

### DOMESTIC PARTNER'S ASSIGNMENT OF ERROR

> THE COURT ERRED IN DEPRIVING [DOMESTIC PARTNER] OF HER CUSTODIAL RIGHTS WITHOUT A TRIAL AND ADJUDICATION ON THE MERITS OF HER FITNESS AND THE BEST INTEREST OF THE CHILDREN.

**{¶13}** Domestic Partner argues that the juvenile court erred by effectively bifurcating the hearing and refusing to consider evidence regarding the best interest of the children when it

denied her the opportunity to exercise her contractual custodial rights. Based on this Court's resolution of Mother's assignment of error, Domestic Partner's assignment of error has been rendered moot.

{¶14} The high court in *Mullen* set out the applicable test to determine whether to order shared custody between a parent and a non-parent. *Mullen* at ¶ 12. First, the court must determine whether a contract (written or implied by conduct) exists which confers custodial rights on the non-parent. *Id*. If so, then the court must consider the second prong of the test, i.e., whether it is in the best interest of the children to order shared custody. *Id*. If, however, there is no contract evidencing the intent for the parent and non-parent to share custody, the trial court need not consider whether shared custody would be in the best interest of the children. *Id*. As this Court has previously determined that there was no contract for shared custody, the juvenile court was not required to consider whether shared custody was in the best interest of the children. This Court renders no conclusion regarding whether the juvenile court in fact considered the issue of best interest. Moreover, as Domestic Partner did not challenge the juvenile court's refusal to grant her visitation with the children, we decline to consider that issue also. Domestic Partner's assignment of error is moot.

### III.

{¶15} As a final note, this Court is concerned that no guardian ad litem was appointed to represent the best interest of the children. Although it was a moot point in this case because the parties had not attempted to enter into a shared custody agreement, where such an agreement exists and implementation of that agreement hinges on the best interest of the children, the appointment of a guardian ad litem is warranted.

IV.

{¶16} Mother's assignment of error is sustained. Domestic Partner's assignment of error is moot and we decline to address it. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is reversed and the cause remanded for further proceedings consistent with this opinion.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant/Cross-Appellee.

DONNA J. CARR
FOR THE COURT

HENSAL, P. J.
CALLAHAN, J.
CONCUR.


APPEARANCES:

MARY ELLEN LESLIE, Attorney at Law, for Appellant/Cross-Appellee.

CHELSAY B. FINNEY, Attorney at Law, for Appellee/Cross-Appellant.